THE PENNSYLVANIA RAILROAD COMPANY, PLAINTIFFS IN ERROR, v. CHARLES B. MATTHEWS, DEFENDANT IN ERROR.

1. A non-suit is proper when from the plaintiff's own showing, it *clearly* appears that he contributed by his own carelessness to the happening of the accident from which he received damages.
2. As a general rule, a railroad company is not bound to keep a flagman at the points where its road intersects public highways.
3. But this obligation may become due by reason of such company constructing its road so as to make the crossing or use of such highways unnecessarily dangerous.

On error to the Supreme Court.

This case was tried before Justice Depue and a jury at the January Term, 1873, of the Essex Circuit. The horses and wagon of the plaintiff were run over by the train of cars of the defendant, and the suit was brought for damages thus occasioned. A verdict having been rendered for the plaintiff, and judgment entered thereon, a writ or error was brought to this court.

For the plaintiffs in error, *I. W. Scudder.*

For the defendant in error, *R. W. Parker* and *C. Parker.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.   A railroad track is a place of danger, and any one who incautiously places himself upon it, and sustains damage in consequence of such carelessness, is entirely remediless.   The law requires of all persons approaching such a point of peril, the exercise of a reasonable caution, and if this duty is neglected, and an accident thereby occurs, it says to those who are thus in default, that they must bear the ill which is the product, in whole or in part, of their own folly.   This rule is founded deep in a wise public policy, for this species of rashness jeopards not only the individual guilty of it, but the peril is extended to all persons who at the point of time may chance to be in the cars moving over the track. The legal provision operates, at once, as a punishment of the guilty and a protection to the innocent.   This doctrine is established by a series of decisions in this state, and is familiar law both in the English and American courts.

It is one of the unavoidable results of this doctrine that if in an action involving this issue, it appears from the plaintiff's own case that he has in part contributed, by his want of ordinary caution, to the production of the damage of which he complains, he will be subjected to a non-suit.   And this is the ground upon which the first objection to the present judgment has been rested.   But I do not think the facts in proof sustain this contention.

It is not necessary to treat those facts in detail.   It is sufficient for all useful purposes to say, that the evidence on this subject is open to fair debate, and leaves the mind in a state of some doubt on this question, whether the driver of the horses which were destroyed, exercised or not that degree of care which his legal duty exacted.   This being the case, the judge would not have been justified in taking this question from the jury.   Such a course is proper only when the absence of caution is apparent, and is in reason, indisputable.

This exception cannot be sustained.

The only other objection which was pressed upon the argu-

ment, was the one relating to the alleged duty of the defendant to keep a flagman at the point where the collision occurred.

The place in question was one of evident danger. The public road crossed the railroad track a short distance from a deep cut which entirely shut out from view the engine and cars. Just before its intersection with the road the track took a sharp curve. A person standing at the point of intersection could not see along the track into the cut. There were two small buildings belonging to the defendants between the mouth of the cut and the road, so placed as, in some measure, to intercept the sight of a person who had approached close to the place of intersection. It appeared in the testimony that the train of the defendants, on the occasion in question, was moving with considerable speed. It was further shown that a flagman was usually kept at that place, but was casually absent at the time of the accident.

These being the conditions of the case, the judge charged, with respect to the present question, as follows, viz. : " The defendants owed a duty to the traveling public, which may be summed up in this one sentence. They were bound to use all such precautions as are reasonably necessary to give to persons crossing their track on the highway, warning of the approach of their trains, in order to enable persons crossing over the track by the highway, to avoid collision. In that proposition is embraced all the law of the case. That the company were bound to give reasonable warning, either by signals or by a flagman, to persons traveling the highway, to enable them to avoid collision by the company's trains. There is no general rule of law by which a railroad company is bound to place a flagman at a particular crossing, and it is only where, by the configuration of the country, that is, the situation of the adjoining land with respect to the railroad, or where the travel is so constant and frequent over their railroad that the use of ordinary signals would fail to give reasonable notice to the public having occasion to cross the track, that the company is bound to place a flagman at the crossing."

The question is, not whether this enunciation of legal principles is, in the abstract, correct in all its propositions, but whether it is so with respect to the precise legal principle involved in the case then in the course of trial. In this narrow aspect, the rule laid down was this, that if that particular place was so peculiarly dangerous, that prudent persons could not use the public road in safety, unless the company employed a flagman or other extraordinary means to signal the approach of their trains, that then, in such event, it was incumbent on them to employ such extraordinary means. And this proposition seems to me to be, in its application to the case then trying, in all respects correct. It is, in fact, nothing more than saying that a railroad company cannot, by the mode in which they choose to construct their road and its appendant buildings, render a public road impassable. I quite agree to the remark made by one of the English judges, that the question whether flagmen are to be required to be kept at every cross-road, is not to be left to the caprice of juries. The statute which confers upon a railroad the right to make a track and work it, by necessary implication, subjects the public to the ordinary risks attendant on the exercise of the privileges thus granted. Under usual circumstances, in the open country, they can run as many trains, and at as great a rate of speed, as are consistent with the safety of their passengers. They are not called on to keep flagmen, under ordinary circumstances, at cross-roads, nor to give any other notice of the approach of their trains than those signals that are prescribed by statute. If greater safeguards are requisite for the safety of the community, and those public agents are to be put under greater restrictions in the exercise of their franchises, such contrivances must proceed from the legislative, and not from the judicial power.

But while I thus say that these additional burthens cannot be imposed by the courts upon these companies, I also say, at the same time, and with quite as much emphasis, that the companies may, by their own conduct, impose such burthens on themselves. If one of them chooses to build its track

in such a mode as to unnecessarily make the use of a public road which it crosses, greatly dangerous, I think such company, by its own action, must be held to have assumed the obligation of compensating the public for the increased danger, by the use of additional safeguards. The reasonable and indispensable implication is, that the railway is to be constructed so as not unnecessarily to interfere with the safe use of the public roads; and if a railroad, for its own convenience, curves its track as it leaves a deep cut, within a few feet of a highway, and also sees fit to put up buildings close along such track, and by these means, or either of them, heightening the danger in the use of such highway, it seems to me very clear, that such company must be held to have taken upon itself the duty of averting such danger, by the employment of every reasonable precaution within its power. On such occasions as this, or whenever the situation is embraced within the principle stated, the presence of a flagman, or some equivalent safeguard can be demanded of the company. The rule is, as I understand it, that when the company has created extra danger, it is bound to use extra precautions. If, the track is put in a position where the trains, when close to their transit over a public street or road, cannot be seen, this is an extra danger which calls for more than the ordinary cautionary signals. I can see no difficulty in applying this rule; it will, obviously, be very much under the control of the court.

The principle thus expressed is the one which, I think, now prevails in the English courts. It was enforced, though without any reference to the theoretical grounds on which the judgment was rendered, in the case of *Bilbee* v. *London & Brighton R. R. Co.*, 18 *C. B.* (*N. S.*) 584. But this decision was considered, and the principle involved in it admirably explained in the recent and important case of *Cliff* v. *Midland Railway Co.*, *L. R.*, 5 *Q. B.* 258. In this latter authority all general liability in railway companies to provide gate-keepers or flagmen is entirely repudiated; but, at the same time, their responsibility for not providing against

unusual risks, of their own creation, is just as decidedly maintained.

With respect to the case of *Beisiegel* v. *The New York Central*, 40 *N. Y.* 9, which was much relied on, upon the argument, by the counsel of the defendant, I have to remark, that on a careful examination, I do not find that it is at all hostile to the doctrine already declared by me. The decision in that case is to the effect that it cannot be left to a jury to find, from the mere fact that a street is in a populous town and is much used, whether it is incumbent on a railway company, whose track intersects such street, to station a flagman at such point. This would clearly be to leave the whole matter to a jury, without anything to control or guide their judgments. Such a course of proceedings would not be justified by the rule, as above defined by me. The charge of the judge in the present case had no such scope as this; the situation of danger, which it was alleged, was extraordinary, had admittedly been occasioned by the defendant, and it was in view of such a state of things that the instruction was given to the jury that if, under such circumstances, they thought a reasonable protection had not been afforded to " the traveling public," by the usual signals, the company were responsible for the failure to use other precautions. In the reported case the danger to be provided against was the ordinary danger consequent on the use of the road under ordinary circumstances; in the case at the circuit the use had been under extraordinary circumstances; hence the difference of the rule applicable to each of the cases. That the New York decision did not reach beyond the limit thus defined is manifest from the more recent case, before the same court, of *Richardson* v. *New York Central R. Co.*, reported in 45 *N. Y.* 846. The facts giving rise to this latter judgment were very similar to those with which we are now dealing. The report states that the track approached the highway through an excavation deep enough to cut off all view of approaching trains, and extending to a point within a few rods of the crossing. The defendant had erected a watch-house, so situated as partially to obstruct the view of the track. The court sustained a

recovery on the ground that, under such circumstances, the defendant was obliged by law to give notice of the coming of its trains in some other manner than by the ordinary signals, that were required by the statute. The reason of the judgment being the extraordinarily dangerous position of the railroad with respect to the public highway. And the opinion read in the case declares that the same principle was substantially held in the decision already quoted, of Beisiegel v. New York Central.

The judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, BEDLE, DALRIMPLE, SCUDDER, WOODHULL, CLEMENT, DODD, GREEN, LATHROP, LILLY. 11.

*For reversal*—None

CITED in *Del., Lack. & W. R. R. Co.* v. *Toffey*, 9 *Vr.* 525; *Bonnell* v. *Del., Lack. & W. R. R. Co.*, 10 *Vr.* 189; *Del., Lack. & W. R. R. Co.* v. *East Orange*, 12 *Vr.* 127; *Penna. R. R. Co.* v. *Righter*, 13 *Vr.* 180; *Klein* v. *Jewett*, 11 *C. E. Gr.* 474.