## THOMPSON v. ROYAL.

### No. 2446.

Court of Civil Appeals of Texas. Eastland.

April 21, 1944.

Rehearing Denied May 19, 1944.

Pipkin & Pipkin and W. G. Reeves, all of Beaumont, for appellant.

King & Reinstra, of Beaumont, for appellee.

GRISSON, Justice.

Leo Royal sued the Railroad Company for damages he alleged he sustained as a result of a collision between defendant's passenger train and an automobile driven by plaintiff. The accident occurred in the nighttime on a public crossing of the railroad and a paved street in the city of Beaumont. The jury fixed plaintiff's damages at $2,500. The court rendered judgment for Leo Royal for $2,525, which included a doctor's bill, agreed upon in the amount of $25. The Railroad Company has appealed.

Appellant contends, among other things, (1) that the trial court erred in overruling its motion for an instructed verdict; (2) that the evidence failed to show negligence on the part of the railroad company, which was a proximate cause of plaintiff's injury, and (3) that Leo Royal was guilty of contributory negligence as a matter of law.

The cause was submitted to the jury and it found (A) that the conditions surrounding the Fourth Street crossing were such as to render that crossing more than ordinarily dangerous as a nighttime crossing. (1) That defendant failed to have a watchman at the Fourth Street crossing at and immediately prior to the collision to warn motorists of the approach of its passenger train upon the main line. (2) That such failure to have a watchman at said crossing was negligence, (3) which was a proximate cause of the collision.

The jury found (15) that it was negligence for defendant to have its switch engine upon the side line, in a stationary position, facing east and immediately adjacent to Fourth Street, at and immediately prior to the collision; (16) that such negligence was a proximate cause of the collision; and (17) that the collision was not the result of an unavoidable accident.

The collision between plaintiff's automobile and defendant's passenger train occurred about 11:30 at night on November 22, 1941. The collision occurred on a much traveled paved street at the edge of the city of Beaumont. Fourth Street runs north and south and intersects the defendant's railroad line at right angles at said point, defendant's railroad lines running east and west. There are three parallel railroad lines at this intersection. The middle track was the main line and was the one occupied by the passenger train which struck Leo Royal. At the time of the collision and for some time, fixed by witness-

es from one-half minute to six minutes, prior to the collision a switch engine belonging to defendant was stopped on a side line a few feet south of the main line and within five or six feet of the paved portion of Fourth Street. The switch engine's headlight was turned across Fourth Street and burning brightly at the time of the collision. One of the operators of the switch engine testified that at or immediately before the collision the bell of the switch engine was ringing and the whistle was blown. Plaintiff testified that several blocks away from the point of the collision and before he turned onto Fourth Street he had noticed the switch engine, which he thought was an engine pulling freight cars, standing on the west side of the crossing; that he turned onto Fourth Street about a block from the crossing; that he let five or six automobiles get ahead of him at that point; that they all proceeded across this railroad crossing without slowing up and with safety; that plaintiff was about one block behind the last of said automobiles at the time he attempted to drive over the crossing; that he was driving from 12 to 15 miles per hour; that on his left were buildings, which, together with defendant's switch engine, obstructed his view to the left so that he did not see the passenger train on the main track approaching the crossing; that plaintiff was constantly looking to the left and watching the switch engine; that he concluded the switch engine was not going to cross the highway section and started to cross; that he could not and did not see the defendant's passenger train until he had passed in front of the engine and had the front wheels of his automobile on the south rail of the main track, when he saw the passenger train "in a hitting position" and that he was immediately thereafter struck by the passenger train. The engineer on the passenger train corroborated the testimony of plaintiff to some extent, that is, he testified that he did not see the plaintiff's automobile until it came around the front of the switch engine, that the switch engine obstructed his view so that he could not see the plaintiff's automobile until that time, and that when he did see the plaintiff he was within 15 to 20 feet of him. The gist of the plaintiff's testimony was that his attention was focused on the switch engine and he did not know of the approach of the passenger train until immediately before it struck his automobile. The evidence shows without dispute, except that plaintiff says he did not see it, that on the south side of the railroad crossing and on the east side of Fourth Street, the railroad had in operation a wig-wag signal with a red light and a ringing bell. When the whole of the testimony is considered, however, it is not at all unreasonable to believe that a person situated as plaintiff was immediately before the collision, if he had seen and heard the wig-wag signal, might reasonably have concluded that they were intended only to warn travelers on the highway of the fact that the switch engine was at the crossing.

Plaintiff alleged "That at said intersection of Fourth Street with the railway lines of the defendant, the defendant owns and maintains two or more railway lines, running parallel to each other in an east and west direction, and at right angles to said Fourth Street. That the main railway line of the defendant, and being the railway line on which said passenger train was being operated at the time of the collision, lies immediately north of a side line owned and operated by the defendant, so that the plaintiff would first have to cross said side line before he would come upon and across said main railroad line. That on the occasion of the collision heretofore alleged, a stationary freight train, owned and operated by the defendant, was upon and occupied the side line of the defendant and the engine of said freight train, with its headlight burning, was in a stationary position immediately adjacent to the west line of Fourth Street. That such location of said freight train, with its headlight burning, and being to the left of the plaintiff as he was proceeding north on Fourth Street, and a number of buildings on plaintiff's left, so obstructed the view of the plaintiff so as to prevent him from seeing any train which might be travelling in an easterly direction on the main line of the defendant at said point, and the location of said freight train in a stationary position immediately adjacent to the west side of Fourth Street, with its headlight burning, and the location of said buildings, created a dangerous and extra-hazardous condition at said crossing, in that, it was calculated to cause, and did cause the plaintiff and others similarly situated to believe that it was safe to proceed across the railway lines in question, as the only train which was capable of being seen was in a stationary position. That immediately prior to the time that plaintiff attempted to cross said railway lines, he observed the position of said stationary freight train, observed that it was

not moving and that vehicular traffic immediately in front of him was proceeding safely across said railway lines, which course of vehicular traffic was open and obvious to the agents, servants, and employees of the defendant who were in charge of and operating said freight train and who were in the immediate vicinity of said crossing, and who were in a position to see the approach of the passenger train of the defendant, which subsequently ran into and collided with plaintiff's car. That plaintiff, under such circumstances and conditions, and observing the safety with which the vehicles ahead of him proceed over said crossing, and having no warning of any kind of the presence or approach of any train, other than the stationary freight train, proceeded across said railway lines and after he had crossed the side line on which the freight train was located and had entered upon the main line of the defendant, he was struck forcibly and violently by a passenger train of the defendant, which was being operated at an excessive and dangerous rate of speed over said crossing."

■ In connection with issue number "A", that is, whether the crossing in question was more than ordinarily dangerous as a nighttime crossing, the court instructed the jury that it would not be more than ordinarily dangerous unless its condition was such that a reasonably prudent person could not by the exercise of ordinary care use the same with safety.

■ We recognize that the facts, which, we think, support the findings of negligence on the part of the defendant present an unusually close question. Therefore, we have given careful consideration to all the testimony pertinent to those issues. We have concluded that the evidence is sufficient to raise said issues and sustain the findings of the jury. The same thing is true with reference to the jury's finding that plaintiff was not guilty of contributory negligence. We are also of the opinion that the court did not err in overruling defendant's motions to disregard certain jury findings and to render judgment for the defendant. These conclusions, we think, are supported by the following authorities: Lehigh Valley R. Co. v. Ciechowski, 2 Cir., 10 F.2d 82, 85, certiorari denied, Chicago, R. I. & G. R. Co. v. Zumwalt, Tex.Com. App., 239 S.W. 912, 916; Missouri, K. & T. R. Co. of Texas v. Magee, 92 Tex. 616, 620, 50 S.W. 1013; Missouri, K. & T. R. Co. of

Texas v. Long, Tex.Com.App., 299 S.W. 854; Galveston, H. & S. A. R. Co. v. Wells, 121 Tex. 310, 323, 50 S.W.2d 247; Panhandle & S. F. R. Co. v. Friend, Tex.Civ. App., 91 S.W.2d 922; St. Louis, B. & M. R. Co. v. Brack, Tex.Civ.App. 102 S.W.2d 261, 269.

The judgment of the trial court is affirmed.