PHILLIPS et al. v. TEXAS &
PACIFIC RY. CO.
No. 4631.

Court of Civil Appeals of Texas. El Paso.
May 4, 1949.

Rehearings Denied May 25, and
June 15, 1949.

McGILL, Justice.

This was a suit for compensatory damages for wrongful death and for serious bodily injuries growing out of a railroad crossing accident in which three persons, occupants of an automobile, were killed, and the driver of the automobile was seriously injured. The accident occurred in Pecos, Reeves County, on March 17, 1947, at about 2:30 o'clock A.M. Originally three suits were filed in the District Court of Reeves County which were subsequently transferred to the District Court of Winkler County and consolidated for trial by agreement of the parties. There is no question that the surviving causes of action for the deaths of Mildred Stuart and James Webster Legg, two of the persons who lost their lives in the tragedy, and the cause of action of Charles I. Smith, the driver of the automobile who was seriously injured, and who sued in his own right, vested in the respective appellants, who were plaintiffs in the trial court. Trial to a jury resulted in answers to special issues on which the court rendered judgment that plaintiffs take nothing.

No question is presented as to the pleadings, and they need not be noticed. Appellants rely on three points for reversal: (1) The court's refusal to submit plaintiffs' requested special issue to determine whether or not defendant's employees in charge of the train kept a proper lookout and issues whether such failure was negligence and a proximate cause of the collision; (2) The court's refusal to give plaintiffs' requested instruction and definition of "extra hazardous crossing"; (the jury having found that the crossing in question was not extra hazardous) and (3) the error of the court in overruling plaintiff's motion for a new trial because of misconduct of the jury.

We shall first consider the third point. The jury found that the rate of speed at which defendant's train was being operated at the time of and immediately prior to the collision was 55 m.p.h.; that such rate of speed was a proximate cause of the fatal injuries to the deceased; but that such rate of speed did not constitute negligence.

Starley & Preston, Pecos, Robert A. Glasier, Carlsbad, New Mexico, for appellants.

Hudson & Tomlin, Pecos, for appellee.

The misconduct complained of consists of several discussions alleged to have occurred during the deliberations of the jury while they were considering special issue No. 2, which inquired whether the rate of speed of the train constituted negligence; one discussion being to effect either that there was no law, or that the jurors knew of no law, regulating the speed of trains through Pecos; a·discussion of the fact that trains passed through towns other than Pecos at various rates of speed, and a discussion of the fact that trains went through other towns at 55 m.p.h., such towns and instances being named, and a specific instance in East Texas was mentioned. Ten of the jurors testified on the hearing of the motion for a new trial. Subpoenas were issued for the other two jurors and were returned "not served". The foreman, Brelsford, and six jurors testified that a discussion relative to the regulation of the rate of speed of trains through Pecos occurred while the jury was considering and before they had arrived at their answer to special issue No. 2. According to some of these jurors the discussion was to effect that there was no law limiting the rate of speed of trains through Pecos. Others testified to effect that the discussion was that they knew of no such law. The juror Peck testified that there was a discussion of the fact that trains passed through towns other than Pecos at various rates of speed, and the foreman testified that this was mentioned. The juror Crossnoe testified that there was a discussion of the fact that trains went through towns other than Pecos "at that rate of speed" (55 m.p.h.) and that towns and instances, one in East Texas, were named. The foreman and the jurors Cruse and Compton testified that the discussions influenced them in arriving at the verdict. Three jurors testified that they had no memory of the discussions as testified to by the other jurors, but they did not deny that such discussions occurred.

■ . Appellee's contention that since the trial judge filed no findings it must be presumed from the order overruling the motion for a new trial that the court found from a preponderance of the evidence adduced on the hearing of the motion that no misconduct occurred, is untenable. This is the rule stated in Myers v. Thomas, Tex. Civ.App., 182 S.W.2d 266, loc.cit. 269 (5-6). However, such rule has no application where there is no conflict in the evidence. There were no findings in Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462, 469 where the judgment was reversed because of misconduct. It is true that in passing on the question of whether misconduct occurred the court has the same latitude in determining the credibility of witnesses and the weight to be given their testimony as the jury had upon the trial of the original cause. Monkey Grip Rubber Co. v. Walton, 122 Tex. 185, 53 S.W. 2d 770; Martin v. J. S. Hunt Lumber Co., Tex.Civ.App., 180 S.W.2d 956. Here as appears from the above statement, there is no conflict in the testimony, and the presumption cannot be indulged.

■ We have concluded that the discussions referred to constituted material misconduct, and that injury probably resulted therefrom to appellants. Therefore, under Rule 327, Texas Rules of Civil Procedure, the court should have granted a new trial and failure to do so constitutes reversible error.

It is apparent from the evidence that some of the jurors, from the discussions referred to, assumed as a fact that there was no law—common law or statutory law enacted by the Legislature of Texas or by ordinance of the town of Pecos—that limited the rate of speed of trains through the town of Pecos—this notwithstanding the court's stereotyped definition of negligence contained in the charge, and that total absence of any evidence as to the existence or non-existence of such law; that with this assumption as a basis they then reasoned that any rate of speed could not constitute negligence. Also, that the fact that trains went through other towns at the same rate of speed which they had found appellee's train went through Pecos on the occasion in question was mentioned and discussed, the towns and specific instances being named, and that the various rates of speed at which trains went through towns other than Pecos was also discussed, although there was no evidence of these

facts. That this amounts to the receipt of other testimony and constitutes misconduct within the purview of Rule 327 we think clear. Nor can there be any serious doubt from the record as a whole that it reasonably appears that injury probably resulted to appellants from such misconduct. The jurors' testimony that they were influenced by the discussions in arriving at their verdict on their answer to special issue No. 2 is utterly without force or effect, one way or the other in passing on the question of jury misconduct, Sproles Motor Freight Lines v. Long, 140 Tex. 494, 168 S.W.2d 642, and can have no bearing in determining whether injury resulted to appellants therefrom. It is never permissible to allow a juror to preserve or destroy his verdict by testifying to the mental processes by which he reached the same. Barrington v. Duncan, and Sproles Motor Freight Lines, Inc., v. Long, supra. Such testimony is not entitled to a feather's weight. However, we regard the finding that the rate of speed of the train was a proximate cause of the injuries to the deceased as having an important bearing on the question of the effect of the misconduct. Under the court's definition of proximate cause this finding included the finding that from the rate of speed it was reasonably foreseeable that the collision or a similar event was likely to result. That one could reasonably foresee that the collision or a similar event would likely result from the rate of speed and at the same time exercise ordinary care in maintaining such speed is difficult to conceive. In other words, the affirmative finding on proximate cause comes dangerously near to being in conflict with the negative finding on negligence. Whether or not it does so conflict it is to our minds a strong indication that the answer to special issue No. 2 resulted in part from the misconduct referred to. In view of this finding and the findings of substantial damages suffered by appellants and the absence of any findings other than the answer to special issue No. 2 which would bar recovery for the deaths of the deceased, we think it apparent that it reasonably appears that injury probably resulted to appellants from such misconduct.

■ In view of another trial we shall briefly notice the other points presented. In our opinion the evidence was sufficient to raise an issue as to whether the fireman or the head-end brakeman failed to keep a proper lookout for the automobile in which the deceased and Smith were riding when it was approaching the crossing from the north. The evidence is undisputed that the engineer could not have seen such automobile from his position in the cab of the engine, and, hence no issue was raised as to his failure to keep a proper lookout. If the evidence is the same on another trial and is supported by the proper pleading, an issue of whether the fireman or the head-end brakeman failed to keep a proper lookout should be submitted. We do not pass on the sufficiency of the wording of plaintiff's requested special issue No. 1.

■ There was no error in the court's definition of the term "extra hazardous crossing." This definition was:

"The term 'extra hazardous crossing' is meant a particular crossing which is shown to be more than ordinarily dangerous, one attended with unusual or extra hazards, a crossing so particularly dangerous that an ordinary prudent person cannot use the same with safety."

The objection was that there was not added to the definition the words "unless extraordinary means are used to protect such place." Appellant's contention is that under the court's definition the crossing, to be extra hazardous, would have to be such that it could not be used by anyone safely, and that if someone did use it without injury then they had used it safely, and hence it was not extra hazardous. This is circuitous reasoning, and is unsound. It does not follow that because the crossing could not be safely used no one could use it without injury. The definition given by the court is substantially the same as that requested in Missouri, K. & T. Ry. Co. of Texas v. Long, Tex.Com.App., 299 S.W. 854, 856, cited by appellants, in which the court said:

"The defendant in error insists that the requested charge does not correctly define the term used in the charge. We do not agree with this contention * * *".

A similar charge was given and approved in Thompson v. Royal, Tex.Civ.App., 181 S.W.2d 317, Wr.Ref.W.M. Appellants rely on the following language of Judge Critz, speaking for the Commission of Appeals in Missouri, K. & T. Ry. Co. of Texas v. Long, supra:

"Thus it will be seen that our Supreme Court, in approving the holding of the New Jersey court, has in effect defined an extraordinary place of danger as a place so peculiarly dangerous that prudent persons cannot use the same with safety, *unless extraordinary means are used to protect such place.*" (Emphasis ours.)

We construe this languge to mean that if the crossing is such that prudent persons can not use it safely, it is extra hazardous and there is a duty on the railroad to employ extraordinary means to protect the traveling public at the crossing. This is clear from the langauge employed in Pennsylvania Railway Company v. Matthews, 36 N.J.L. 531, 534, quoted by Judge Critz. Furthermore, had the requested language been added, it would have permitted the jury to speculate as to what was meant by "extraordinary means" and would have been improper unless it had gone further and specified the "extraordinary means" which plaintiff alleged and introduced proof to show should have been employed, i. e., automatic lighting signals or a flagman. See the charge in St. Louis Southwestern Ry. Co. of Texas v. Waits, Tex.Civ.App., 164 S.W. 870, Wr. Ref. cited by Judge Critz.

For the error indicated the judgment is reversed and the cause remanded.

Reversed and remanded.

SUTTON, Justice (concurring).

I concur in the disposition of this case for the reason assigned by Associate Justice McGill and desire to make a brief additional statement with respect to such reason.

It is perfectly obvious from the testimony the jurors did receive the additional testimony and the consideration given thereto is the underlying reason and explanation for their negative answer to Special Issue No. 2. Jurors have a right to apply in the consideration of their verdicts their common experiences which are the common experiences of man generally. In giving consideration to the unsworn testimony trains were operated through other towns at comparable rates of speed, as well as through Pecos, and the fact they knew of no law prohibiting such speed, might very well infer there was no such law otherwise it would have been shown by the evidence. They as laymen might well have concluded, as their verdict demonstrates they did, that in the absence of a legal prohibition the defendant was licensed to so operate their trains and that there could be no negligence. An answer based upon any other testimony would be altogether contrary to common sense and judgment. As some of the jurors put it in their testimony on the Motion for a New Trial, the operation of a train through Pecos and across the crossing where the terrible accident happened is proof of negligence itself. This line of railway runs pretty well through the center of the city of Pecos and a very short distance from the busy center. The running of a train through this active, thriving, busy city over a crossing such as is here, at such a speed, is obviously so reckless as to approach a total disregard of the rights and safety of those using crossings in the city. In the light of the other answers based on the record any other explanation for the answer given to Issue No. 2 can do little less than convict the jury of stupidity.

On Motion for Rehearing.

McGILL, Justice.

We were in error in reversing the trial court's judgment in favor of appellee against appellant Charles I. Smith, the driver of the automobile. The jury found that Smith was negligent in failing to keep a proper lookout for trains approaching from the west, and in failing to heed the headlight of the approaching train, and that such negligence was a proximate cause of the collision. It is apparent that the misconduct of the jury which required a reversal could have had no bearing on these findings. Therefore, as to appellant

Charles I. Smith, it is ordered on our own motion that our judgment reversing the trial court's judgment as to him be set aside and that as to said Charles I. Smith the judgment of the trial court be affirmed.

As to all other appellants, appellee's motion for rehearing is overruled.

## On Rehearing.

PRICE, Chief Justice.

■ We have given careful and painstaking attention to the able motion of appellee for a rehearing, and still adhere to the views expressed in the original opinion. In view of the fact that while beyond any question it was stated in the jury room in substance that there was no law regulating the speed of trains under the circumstances; that trains went through Pecos and other towns at a. high rate of speed, however the testimony of all the jurors was not precisely the same. The construction was for the trial court. In deference to its ruling we must adopt the most favorable construction which supports the action taken in overruling the motion for a new trial. If this standard be adopted it is still our view that harmful misconduct was disclosed.·

■ In our opinion there is an error apparent from the face of the record that requires the reversal of this case even though same be unassigned by appellant. In response to issues No. 1 and 2 the jury found that on the occasion in question the train was operated at a speed of 55 m.p.h. and the operation of the train at such rate of speed did not constitute negligence. Special Issue No. 3 was as follows:

"Do you find from a preponderance of the evidence that the rate of speed at which defendant's train was being operated at the time of and immediately prior to the collision in question was. the proximate cause of the fatal injuries to deceased Mildred Stuart and deceased James Webster Legg?"

The jury answered this issue in the affirmative. The court defined proximate cause as follows:

"By the phrase 'proximate cause' as that expression is used in this charge, is meant that cause, which in a natural and continuous sequence, produces an event, without which the event would not have occurred; and, in order to be the proximate cause of an event, it must be reasonably foreseeable that such event, or some similar event, is likely to result from such cause. There may be more than one proximate cause of an event."

Construing findings 1, 2 and 3 together, in substance we think established as a fact that it was not negligence to operate the train at 55 m.p.h. on the occasion in question; further that it was reasonably foreseeable by the employees of defendant operating the train at that rate of speed that the collision in question would occur, or some similar accident. A judgment for the defendant under these findings implies that it was not negligence to operate a train at a rate of speed from which it could be reasonably anticipated that .there might be a collision between the train , and an automobile using the streets of Pecos or a similar calamitous event.

Implicit in attributing the quality of negligence to an act or omission is the notice of or a duty to know of its harmful tendency.· 38 Am.Jur. p. 667, par. 24; Seale v. Gulf C. & S. F. Ry. Co., 65 Tex. 274, 57 Am.Rep. 602; City of Dallas v. Maxwell, Tex.Com.App. 248 S.W. 667, 27 A. L.R. 927, Opinion adopted.

There is no just criticism to be levelled at the court's ·definition of "proximate ·cause". Included in this definition is foreseeability of probable consequence of the action in question. The finding that the rate of speed was the proximate cause of the collision comprehends and includes under the definition given a 'finding that the collision was reasonably foreseeable from the rate of speed in question. In truth and fact the answers to special issues No. 2 and 3 are in conflict. The consequence of such a conflict is that there is no finding. 41 Tex.Jur. 1226, par. 361; Tex.Jur. 10 year Sup. Vol. 9, page 383, par. 361.

The verdict should not have been received and judgment for the defendant was not justified and supported by the verdict. It is thought that under the case of Ramsay v. Dunlop, ·Tex.Sup., 205 S.W.2d 979 it

is the duty of this court to consider the error although same is unassigned. In view of the fact that the reversal of this case is placed on an additional ground it is ordered that appellee have full time for filing a second motion for rehearing.