**Mrs. O. J. SNIDER, Administratrix,**
**Appellant,**

v.

**The TEXAS & PACIFIC RAILWAY COM-**
**PANY, Appellee.**

No. 7017.

Court of Civil Appeals of Texas.

Texarkana.

June 10, 1958.

Rehearing Denied July 8, 1958.

Jones, Brian & Jones, Marshall, Meredith, Adams & Shepperd, Longview, for appellant.

Bibb & Green, Marshall, Earl Roberts, Longview, J. T. Suggs, Tom L. Farmer, Dallas, for appellee.

DAVIS, Justice.

Plaintiff-appellant, Mrs. O. J. Snider, a widow, individually and as temporary administratrix of the estate of O. J. Snider, deceased, sued defendant-appellee for damages arising from a collision at a street and railroad crossing in the City of Longview, Texas, between a pick-up truck driven by O. J. Snider and a train of appellee. The collision occurred on June 26, 1956, and resulted in the death of O. J. Snider on July 19, 1956. Trial was to a jury and in response to special issues submitted found that: (Issues not answered are omitted; the issue numbers skipped from 18 to 25) (1) The crossing was extrahazardous; (2) appellee knew, or by the exercise of ordinary care should have known at such time, that the crossing was extrahazardous; (3) the failure of appellee to place a warning system of lights and bells at the crossing prior to the collision was negligence; (4) such negligence was a proximate cause of the collision; (5) appellee *did not fail* to sound the whistle on the engine at a distance of at least 80 rods from the crossing in question; (7) appellee *did fail* to ring the bell on the engine at a distance of at least 80 rods from the crossing and did fail to keep such bell ringing until the engine had crossed the crossing; (8) the failure to ring the bell and keep it ringing *was not* a proximate cause of the collision; (9) that the engine of the train was being operated at a rate of speed in excess of 40 miles per hour as it approached the crossing; (10) the operation of such train in excess of 40 miles per hour was negligence; (11) such operation at such speed was a proximate cause of the collision; (12) the value of the pick-up immediately before the collision was $400, and immediately after was $105; (13) the value of the hospital, medical, nursing and doctor expense to be $2,248.25; (14) the value of the burial expense to be $1,269; (15) damages for conscious pain and suffering, "none"; (16) damages for death of O. J. Snider $59,800; (17) the train was plainly visible to O. J. Snider before he reached a point 15 feet from the nearest rail of the railroad track; (18) the train *was not* "in hazardous proximity" to the crossing before the truck driven by O. J. Snider reached a point 15 feet from the nearest rail of the railroad track; (19) the train was approaching the crossing within 1,500 feet of the crossing at a time when Snider's truck was more than 15 feet and less than 50 feet from the nearest rail of the railroad track; (24) the train was emitting a signal that was audible at the crossing before Snider reached a point 15 feet from the nearest rail of the railroad track; (25) the train *was* "an immediate hazard" before deceased reached a point 15 feet from the nearest rail of the railroad track; (26) Snider *did* stop his truck within 50 feet, but not less than 15 feet from the nearest rail of the railroad track; (27) after Snider stopped his truck, he then proceeded when he could not do so safely; (28) Snider's proceeding when he could not do so in safety was a proximate cause of the collision; (30) Snider *did not fail* to keep a proper lookout for trains approaching

from the west while driving his truck in a westerly direction and before turning southerly toward the crossing in question as would have been kept by a person of reasonable prudence in the exercise of ordinary care under the same or similar circumstances; (32) Snider, while driving in a southerly direction within 40 feet of the railway track, *did not fail* to keep a proper lookout; (34) Snider did not fail to look to the west for approaching trains immediately before attempting to drive across the railway track; (36) Snider *did not fail* to see the approaching train before driving his truck upon the railway track; (39) Snider was guilty of contributory negligence by driving his truck upon the railway track after seeing the approaching train; (40) the whistle of the train *was blown* before the truck was driven upon the railway track; (41) Snider *did not fail to hear* such whistle; (43) Snider *did hear* the noise of the approaching train before attempting to drive across the railway track; (44) Snider's attempting to drive his truck across the railway track, after hearing the noise of the train, constituted contributory negligence on his part; (45) Snider *did not fail* to hear the noise of the train before driving his truck upon the railway track; (47) Snider's failure to stop his truck and wait for the train immediately before driving upon the railway track, under all the then existing circumstances, constituted contributory negligence on his part; (48) Snider *did not* allow his truck to stall or temporarily stop while it was upon the main line of the track; and (50) it *was not* an unavoidable accident.

Upon receipt of the verdict, appellant filed a motion for mistrial because of certain conflicts in the verdict. The motion was overruled and judgment was entered that appellant take nothing. Appellant's motion for new trial was overruled and she has perfected her appeal. She brings forward only three points of error; although she filed numerous exceptions to

the court's charge and raised many more points in her motion for new trial.

This is another case in which the special issues were framed in an effort to try to comply with and conform to the requirements of Sec. 86 of Article 6701d, Vernon's Annotated Civil Statutes, which reads as follows:

"Sec. 86. Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty (50) feet but not less than fifteen (15) feet from the nearest rail of such railroad and shall not proceed until he can do so safely when:

"(a) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a train;

"(b) A crossing gate is lowered, or when a human flagman gives or continues to give a signal of the approach or passage of a train;

"(c) A railroad engine approaching within approximately fifteen hundred (1500) feet of the highway crossing emits a signal audible from such distance and such engine by reason of its speed or nearness to such crossing is an immediate hazard;

"(d) An approaching train is plainly visible and is in hazardous proximity to such crossing."

Justice Calvert pointed out in Missouri-Kansas-Texas Railroad Co. v. McFerrin, Tex., 291 S.W.2d 931, 938–939, that: "Section 86 is but one of 156 sections contained in a comprehensive Act of the 50th Legislature, passed in 1947, regulating traffic on highways * * * The historical note to Article 6710d contained in Vernon's Annotated Texas Statutes, states that it is similar to the Uniform Act regulating traffic on highways but that it contains many additions and differences * * *." To which we add the following

from said historical note: "This act was declared obsolete by the National Conference on Uniform State Laws and the question whether the conference should interest itself further in the subject was referred to the Committee on Scope and Program, in August, *1943*. See Handbook of the National Conference, 1943, p. 69." The history ends there; we got the Act in 1947.

We call attention to the provisions of the Act because the appellant's points require the Court to construe certain special issues submitted in an effort to comply with the Act, and the jury's answers thereto. In Point One, appellant contends that there is · an irreconcilable conflict between the answer of the jury to Special Issue No. 18, and its answers to Special Issues Nos. 25, 27, 28, 39, 44 and 47.

We only have to look to two of the special issues and answers, 18 and 25, to determine that there is definitely such a conflict.

In order to plainly demonstrate our conclusion, Special Issues 18 and 25, the explanatory instructions given by the trial court immediately following each issue, and the answers of the jury to each of said issues are copied, as follows:

"Special Issue No. 18:

"Do you find from a preponderance of the evidence that defendant's train was in hazardous proximity to the crossing in question before the truck driven by O. J. Snider reached a point 15 feet from the nearest rail of the railroad track?

"Answer 'Yes' or 'No.'

"Answer: No.

"In connection with your answer to this special issue, you are instructed that *defendant's train was* 'in hazardous proximity' to the crossing, if it was, *when, under all the circumstances and facts in evidence, the speed and*

*nearness of the train was such that a reasonably prudent person, situated as was the plaintiff* (sic) (deceased), *should have known that an attempt to proceed over the crossing ahead of the train 'was hazardous.'*"

"Special Issue No. 25:

"Do you find from a preponderance of the evidence that the *defendant's train was, by reason of its speed or* (sic) *nearness to the crossing in question,* an immediate hazard before deceased reached a point 15 feet from the nearest rail of the railroad track?

"Answer 'Yes' or 'No.'

"Answer: Yes.

"In connection with this special issue, you are instructed that defendant's train was an immediate hazard, and it was, *when, under all the surrounding facts and circumstances in evidence, the speed and nearness of the train was such that a reasonably prudent person, situated as was the deceased, should have known that an attempt to proceed over the crossing ahead of the train 'was hazardous.'*" (Emphasis added.)

Appellant contends that the time and place in question inquired about in each issue (18 and 25) is a point 15 feet from the nearest rail of the railroad track. With this contention, we agree. When the issue is considered in connection with the whole charge, which includes the specific and special instructions given in connection with each issue, there can be only one conclusion reached; the jury made opposite findings on a single issue of fact.

· In response to Issue No. 18, the jury found that the train *was not* "in hazardous proximity" to the crossing at any time before (when) Snider reached a point 15 feet from the nearest rail of the railroad track. And we must presume that the jury followed the special instruction given by the trial court to guide them in answering

the issue. Therefore, the jury took into consideration all the facts and circumstances in evidence, the speed and nearness of the train, and found that a reasonably prudent person *would not* have known, at the time and place in question, that an attempt to proceed over the crossing ahead of the train was hazardous.

In response to Issue 25, the jury found that the train *was* "an immediate hazard" before (when) Snider reached a point 15 feet from the nearest rail of the railroad crossing by reason of the speed *or* (sic) (the word "or" probably should have been "and") nearness of the train, and taking into consideration all the surrounding facts and circumstances in evidence, the speed and nearness of the train, the reasonably prudent person, etc., as specially instructed by the trial court. We must presume the jury followed those special instructions.

Can a train be "an immediate hazard" at a specific time and the same identical place, and *not* be "in hazardous proximity" to the same identical place at the same time under the same identical facts, circumstances and instructions? Definitely, it can not. Under such facts and circumstances, if the train *was not* "in hazardous proximity" to the crossing, it could *not* have been "an immediate hazard." If the train *was* "an immediate hazard" at such time and place, it would have to be "in hazardous proximity" to the crossing. The trial court did not attempt to make any distinction between "in hazardous proximity" and "an immediate hazard." Neither will we. The trial court defined them identically.

■ The matter inquired about in the two issues, under the pleading, evidence and the law is one necessary to a proper determination of the legal effect to be given the conduct of the motorist, Missouri-Kansas-Texas R. Co. v. McFerrin, supra; 34 Texas Law Review, 971–973, and must be disposed of by a jury finding.

Appellee takes the position that the jury had in mind two different points when they answered Issues 18 and 25. In Missouri-Kansas-Texas R. R. Co. v. McFerrin, supra, the court said:

"If there is a duty on the motorist *to act* it arises as he approaches and comes *within* the statutory stopping area. It is at that time that he must determine whether he is under a statutory duty to stop. As heretofore pointed out, the existence of the duty is not absolute but is conditioned on *the* existence at the time of a certain state of facts. * * *" (Emphasis added.)

Under the statute, the space in which a motorist is required to act is not more than 50 feet and not less than 15 feet from the nearest rail of the railroad track. The most that can be said about the time and place inquired about in the two issues is the 35-foot space fixed by statute.

■ The findings of the jury on a material issue being in irreconcilable conflict, the trial court should have set the verdict aside and granted a new trial. Dillard v. Traders & General Ins. Co., Tex.Civ.App., 271 S.W.2d 825, no wr. hist.; Pearson v. Doherty, 143 Tex. 64, 183 S.W.2d 453; City of Panhandle v. Byrd, 130 Tex. 96, 106 S.W.2d 660; Hancock v. Sammons, Tex.Civ.App., 267 S.W. 2d 252, no wr. hist.; New St. Anthony Hotel v. Pryor, Tex.Civ.App., 132 S.W.2d 620, wr. ref.; and Phillips v. Texas & P. Ry. Co., Tex.Civ.App., 223 S.W.2d 258, wr. ref., n. r. e. The answer of the jury to issue No. 18, when considered alone, would require judgment to be rendered for appellant. The answer to Issue 25, when considered alone, would require judgment to be rendered for appellee. Point 1 is sustained.

■ By Point 2, appellant complains of the action of the trial court in refusing to define the term "proximately contribute to cause" without lengthy discussion.

the point is sustained on the strength of the cases of Dixie Motor Coach Corp. v. Swanson, Tex.Civ.App., 41 S.W.2d 436; International-Great Northern R. R. v. Acker, Tex.Civ.App., 128 S.W.2d 506, wr. dis., and Phoenix Ref. Co. v. Tips, Tex. Com.App., 125 Tex. 69, 81 S.W.2d 60. If we are going to keep our charge to the jury and special issues brief and in a common sense form, there is no point in using a lot of extra phraseology to say a simple thing. If the phrase "proximately contribute to cause" is going to be used, it should be defined. The more simple way is to define "negligence," and "proximate cause." Then submit issues inquiring if (1) the act complained of was committed; then (2) if it was, was the act negligence; and (3) if the act was committed and was negligence, if it was a proximate cause of the injuries or damage complained of. An act complained of can be committed, be negligence and still not be a proximate cause of injuries or damages and will not defeat plaintiff's right to recover. Foster v. Beckham, Tex.Civ.App., 85 S.W.2d 789, wr. ref.

Appellant's Point Three reads as follows:

"The trial court erred in entering judgment against appellant because the jury's verdict was in hopeless conflict on the statutory issues of contributory negligence, and the legislature by the enactment of Article 6701d, Sec. 86, has preempted the entire field of determining the care required of a person approaching a railroad crossing and has left no room for the finding of negligence at variance with the statutory duty."

Appellant relies upon the cases of Larsen v. Halliburton Oil Well Cementing Co., Tex.Civ.App., 105 S.W.2d 368, wr. ref.; Valley Film Service v. Cruz, Tex.Civ.App., 173 S.W.2d 952, wr. ref., w. o. m.; and Ware v. Texas & P. Ry. Co., Tex.Civ.App., 302 S.W.2d 702, wr. ref., n. r. e. These cases place emphasis upon the "legal rights of parties relative to obedience or disobedience to statutory duties." These cases were decided upon a particular state of facts. The holdings will not apply in every case. Under the present rule of decisions, each case must rest upon its own state of facts.

The rule of decision in this State being to the contrary, Point 3 is overruled.

For the errors hereinabove pointed out, the judgment of the trial court is reversed and the cause is remanded.