## YELLOW CAB & BAGGAGE CO. OF SAN ANTONIO v. DONNELL et al.

### No. 11061.

Court of Civil Appeals of Texas.
San Antonio.

Jan. 21, 1942.

Rehearing Denied March 4, 1942.

Randle Taylor and Frank M. Rosson, both of San Antonio, for appellant.

Herbert Oliver, Birkhead, Beckmann, Stanard & Vance, and John Peace, all of San Antonio, for appellees.

SMITH, Chief Justice.

This is a five-way suit growing out of an accident involving a taxicab, two passenger automobiles and a delivery truck, occurring at the intersection of Losoya and Crockett Streets in the City of San Antonio, on September 13, 1939.

B. E. Donnell, driver of a delivery truck belonging to Texas Steam Laundry, sued Yellow Cab & Baggage Company for damages for personal injuries; the Cab Company impleaded R. J. May, owner and driver of one of the passenger cars involved in the accident, claiming that May's negligence was the sole cause of the accident; May reconvened and by way of cross-action sought damages against the Cab Company for personal injuries sustained by his wife in the accident, and also intervened on behalf of his minor daughter, Martha Earle May, for damages for personal injuries alleged to have been sustained by her; and Liberty Mutual Insurance Company intervened and sought to be subrogated to the rights of Donnell against the Cab Company, to the extent of $744.45, which, as insurance carrier, it had paid Donnell in settlement of his claim for disability resulting from the accident, under the Workmen's Compensation Act.

A jury trial resulted in judgment in favor of Donnell against the Cab Company for $3,500 damages for personal injury and $200 doctors' bills, and in favor of the Insurance Company upon its claim against Donnell's recovery; against the Cab Company on its cross-action against May; in favor of May against the Cab Company for $200; in favor of the May child against the Cab Company for $100. The Cab Company has appealed. Although filing separate briefs, Donnell and the Mays have joined in a common fight to sustain the judgment.

The Cab Company rests its appeal upon claims of excessive verdicts, misconduct of the jury, improper argument and conduct of counsel, and admission of improper testimony.

Only appellee Donnell purports to set out in his brief the sequence of events out of which the several controversies arose. Donnell's version is that the taxicab entered the intersection of Losoya and Crockett Streets at a speed of forty or fifty miles per hour, sideswiped May's parked car, careened across the street, striking another parked car at the opposite corner, swung back to the opposite side of the street, sideswiped a lamp post, and with two wheels over on the sidewalk proceeded down the street until it collided with the parked laundry truck, from which Donnell, attempting to leave the truck on the far side, was thrown to the pavement, landing on his back. So far as appears from the briefs of the parties, none of the struck vehicles, except the taxicab, was damaged to the extent of requiring repairs. Neither of the Mays was injured in any way calling for medical attention and sought and received none. Donnell got up from the pavement, walked to the vestibule of the adjacent laundry where he was employed and sat in a chair there, but after half an hour got back in the truck, drove it to the residence of his doctor in the south part of the city, and after examination by the doctor drove the truck back to the laundry, and leaving it there, got in his own car and drove it to his home.

We will first consider the appeal as it relates to appellee Donnell.

Under its first point appellant contends that the verdict in favor of Donnell is excessive. The evidence upon this issue, both as to the nature and extent of Donnell's injuries, and his relative earning capacity before and after the accident, when tested by the bald record, and without reference to other questions having a possible bearing upon that issue, is not such that this Court can say, as a matter of law, that it does not support the finding of the jury, and we are therefore without authority to disturb it. The point is overruled.

But appellant's second point presents a more serious question, to-wit: The charge of jury misconduct, in that some of the jurors discussed the matter of attorney's fees, stating that Donnell would have to pay his attorneys out of any recovery, and that this discussion resulted in at least one juror voting for a larger amount on this account. If in fact the acts of misconduct charged by appellant

948

occurred, we are of the opinion that it was prejudicial and constituted reversible error. This inquiry recurs, then, to the question of whether the alleged misconduct occurred. By overruling appellant's motion for new trial the trial court impliedly found that the misconduct did not occur. We have made an exhaustive examination of the testimony of the jurors in the case, on motion for new trial, and from that examination have concluded that the learned and greatly lamented trial judge erred in finding that the alleged misconduct did not occur.

It is undisputed that the jury devoted most of the afternoon of their deliberations to a discussion, sometimes growing heated, of the question of the amount of damages to be given appellee Donnell; that at times the jurors, assembled around the consultation table, would break into groups of two or more, and these groups would discuss the issue among themselves, apart from the main body. In this way it would be impossible for any one member, or those in a particular group, to know or testify as to what was being said or discussed by any other member or group. With these admitted facts in view, we will endeavor to set out in brief the substance of the relevant testimony of the eleven jurors who were called to testify regarding this question at the hearing on appellant's motion for new trial.

Juror Armbrust:

"One of (the jurors) said the lawyer had to be paid, and we made an agreement and I was holding out for $1,000.00 and they said that wasn't enough and the lawyer had to be paid. So I said, 'We will make it $3,500.00 so the lawyer can get paid.' * * *

"The lawyer had to be paid out of this money so that's the reason I raised it up. * * *

"The foreman said if—The amount was so small, he said the Yellow Cab would appeal the case; that we would raise it up a little bit from $1500 to $3500, which would pay the lawyer fee and other things; doctor fee. * * *

"I wanted to give him an amount so he would get some compensation and to pay his doctor fees and other fees. I was the one man for that. Another man, I don't know his name—Yes. Mr. McConnell, the foreman. He didn't agree with

me. He wanted to go way up to a big figure."

At one point in his testimony Juror Armbrust said he did not know what juror raised the question of attorney's fees, but later identified him as the Foreman, McConnell.

Juror Rummel testified on direct examination by appellant that if he "remembered right" the question of attorney's fees was discussed by the jurors in their deliberations; and on cross-examination that to the best of his recollection this discussion occurred after the jury had agreed on their verdict, and, further, that: "Q. And there was no general discussion with the whole jury with reference to either one of those subjects while you arrived, or were trying to arrive at a verdict? A. Not that I remember."

Juror Manley testified on direct examination by appellant: "We discussed everything, pro and con, and all up and down the line as to how much damages and how much the lawyers would get and everything else; doctor's fees, and everything. We talked it all over. The jury did not do that generally but one member to another talked about it but I wouldn't say any of that was brought up generally before the whole jury."

This juror further testified that he did not remember that there was a general discussion with the whole jury upon "these subjects" while the jury "arrived at or were trying to arrive at a verdict."

Juror Miller, called by appellees, testified that the matter of attorney's fees was discussed, but that, according to his recollection, it came up after the jury had agreed, and then only casually. But he further testified he "wouldn't say" whether the matter came up before or after verdict.

Juror Dreiss testified:

"Q. While the discussion was going on about Mr. Donnell's award and how much should be given him, state whether or not anything was said about his attorney's fee would be pretty heavy? A. I think it was mentioned, that his attorney's fee would be heavy and that that should be taken into consideration.

"Q. And that was while you were discussing the amount for him; how much should be given him? A. Yes, sir. * * *

"Q. Was it before or after you arrived at your verdict that you heard this statement about the attorney's fee? A. It was before."

Juror Johnson testified that there was no "open" discussion of the matter of attorney's fees, but that the jury did not stay together all the time, but were at times scattered around the room, singly and in groups; that "to his knowledge" no "remark" was made on the subject while the matter of damages was under consideration.

Juror Davis testified he did not hear the subject of attorney's fees discussed, but that some of the jurors could have been talking and arguing about attorney's fees at times when they were not "around the table" and were over in another part of the room, beyond his hearing.

Juror Dedeker's testimony was substantially the same as Davis'.

Juror Duke testified that he heard the matter of attorney's fees mentioned, that it was "a casual remark," and that he did not remember whether it was made before or after the jury had agreed upon their verdict.

Juror McConnell, the foreman, testified, first, that the matter of attorney's fees was not discussed, flatly denying Armbrust's testimony, but admitted later that it could have been discussed by some of the jurors beyond his hearing.

Juror Cantu testified that attorney's fees was "mentioned by some one, but it was after we had decided on the amount of money to give" appellee Donnell.

The foregoing accounts for the testimony of eleven jurors; if the twelfth testified we have failed to locate his testimony in the record.

From the foregoing, then, it appears that eleven of the jurors testified upon the issue of misconduct. At least nine of them testified, in one way or another and in varying degrees of positiveness, that the matter of attorney's fees was mentioned by some jurors and considered by at least one of them in determining the amount of damages. Two other jurors testified that the matter was not mentioned or discussed in their presence, but admitted that since the jurors separated into groups of two or more at different times during the hours of their deliberations upon the issue of damages for Donnell, the matter could

have been discussed without the witness' knowledge.

■ We conclude that the testimony of the jurors conclusively established the fact of misconduct, and under the familiar holding in Moore v. Ivey, Tex.Com.App., 277 S.W. 106, and the many cases following it, it cannot be said that the misconduct was not prejudicial to appellant.

■ Numerous other errors are assigned by appellant, but the transactions complained of are not likely to occur upon another trial, and it is unnecessary to pass upon them here, except that we deem it proper to say that the testimony complained of in appellant's fifth point should be excluded, upon proper objection, if offered again. We make the further observation that there is no merit in appellant's complaint of misjoinder of parties.

Because of misconduct of the jury the judgment must be reversed and the cause remanded.

### On Motion for Rehearing.

In the original opinion we did not expressly pass upon appellant's complaints of the judgment against it in favor of appellees May, but reversed the judgment generally. The omission is adverted to in the motion for rehearing filed by those appellees.

■ The judgment in favor of appellee Donnell was ordered reversed because of misconduct of the jury in relation to the amount of damages awarded to him. While that particular misconduct was specifically applicable to the appeal against appellee Donnell, the record discloses that the jury's misconduct extended further and encompassed matters affecting the amount of damages awarded appellees May. At least three jurors testified on appellant's motion for new trial that in their deliberations they, or some of them, raised the question of insurance probably carried by appellant, and the expenses incurred by appellee May in attending the trial of the case, and that this element of expense was considered by the jury in determining the amount of damages. Several jurors testified upon this point, and while this Court probably would not have held that the evidence upon any one of the alleged incidents of misconduct, considered separately, would have warranted reversal, yet when all of the incidents of misconduct, including that

occurring in connection with the issue of the amount of damages to appellee Donnell, are considered together, they show such flagrant and general misconduct as to require reversal. This is so as to appellees May, particularly in view of the meager and unsatisfactory evidence in support of the amounts of damages awarded to them, which may not have been, within themselves, so excessive as to show they resulted from improper consideration.

A careful re-examination of the record does not lessen our firm conviction that the jury was guilty of misconduct which presumably affected their findings, at least as to the extent of appellant's liability, and we adhere to the ruling that the judgment be reversed and the cause remanded for a new trial on the whole case.

The motions of all appellees for rehearing will be overruled.