**W. M. PARRIS, Jr., Appellant,**

**v.**

**Robert W. JACKSON et ux., Appellees.**

**No. 13487.**

Court of Civil Appeals of Texas.

Houston.

July 14, 1960.

Rehearing Denied Sept. 8, 1960.

Second Motion for Rehearing Denied
Sept. 29, 1960.

Hicks, Dollahon, Boss & Wohlt, Willard E. Dollahon, Houston, for appellant.

Landis & Gregory, Buddy W. Gregory, Houston, for appellees.

BELL, Chief Justice.

Mrs. Jackson was injured when an automobile belonging to General Electric Company and driven by appellant Parris ran into the rear end of a car driven by Mrs. Jackson on August 23, 1956. Appellees sued both appellant and General Electric. The trial court sustained a motion of General Electric to disregard the jury's answer to an issue finding Parris was in the course of his employment at the time of the collision and rendered judgment favorable to General Electric. While appellees excepted to such action and gave notice of appeal, they failed to timely perfect their appeal and there is thus no question before us as to that part of the judgment favorable to General Electric. Judgment was rendered against appellant in the amount of $29,-750.

The only question before us is whether the trial court erred in overruling appellant's motion for new trial based on alleged misconduct by the jury during deliberations.

The jury misconduct alleged is asserted in three Points:

1. The jury discussed that General Electric Company had plenty of money and it would have to pay the judgment and Parris would not.

2. The jury discussed the fact that appellees would have to pay an attorney's fee out of any recovery and discussed the percentage the fee would be.

3. Some of the jurors gave evidence of personal experiences concerning damage for pain suffered.

Whether misconduct occurred is a fact question. The trial court made no finding of fact. It will be presumed on appeal that the trial court found misconduct not to have occurred, if there is evidence in the record to support such a finding.

We must examine the testimony. Only two jurors testified at the hearing on the motion, one being C. C. Richardson and the other T. A. Skeaham. Mr. Richardson testified more extensively than did Mr. Skeaham. We will show the testimony as given on each ground of alleged misconduct.

"General Electric had plenty of money. It and not Parris would have to pay"

C. C. Richardson testified the jury deliberated on the afternoon of December 16 and returned a verdict about 10 a. m. on December 17. Issue No. 14, the damage issue inquiring as to loss of earnings, mental pain and suffering, diminished earning capacity, etc., was reached in the discussion about 3:30 in the afternoon of the 16th. He did not recall an "awful lot" being said about General Electric, but "of course it was mentioned back and forth that they were the ones that would have to pay it off." He did not remember who first mentioned it. He only remembered one thing exactly and that was made in jest by Pittman, the foreman, who remarked, "Oh, well, General Electric will never miss it." Pittman's remark was not discussed by anyone else. He thought he heard it several times that Parris didn't have to pay it anyhow. There were various times during the discussion of the damage issue he heard it mentioned. He did not know who said it

and could not give the exact language used. The only thing specifically he remembered was that Pittman accused him of being an executive and this made him mad. His estimate of the number of times would not be too good, but remarks that would mean to him that Parris wouldn't have to pay the judgment were made from 5 to 40 times. He does not know the remarks would have the same meaning to others. The next morning he told the jury they could not consider ability to pay. He couldn't remember what the various statements were because they just didn't make much impression on him. It was just the general atmosphere that prevailed.

Mr. Skeaham testified to nothing on this particular ground of misconduct.

### "Attorney's Fee"

Mr. Richardson testified that while the jury was discussing the damage issues, the matter of an attorney's fee was brought up. He did not remember who first mentioned it but someone said, "Well, she won't get all that. It is going to cost her quite a bit to pay lawyers." Someone else said, "Well, yeah, that is a pretty big cut." The jurors then got to trying to decide how much the lawyers would get. Somebody said 25%. Someone said 33⅓%. No one seemed to know, but Stroud, and he said it was 40%. This discussion occurred the afternoon of the 16th about 4 o'clock. Pittman made one of his witty remarks saying there was quite a bit of expense building up a case like this. Lawyers had to do a lot of work and investigating and had "to pay off witnesses." He doesn't recall any other specific remark. *The matter of an attorney's fee was "probably discussed pretty thoroughly four or five minutes * * *"* It was mentioned from 5 to 40 times. He didn't know whether you would say it was discussed but it was just comments thrown in. The gist of what was said was that they wanted her to get fair compensation and to do so an attorney's fee had to be considered.

Mr. Skeaham testified he vaguely remembered attorney's fees being mentioned in a joking way and it wasn't mentioned long. Someone informed them it wasn't to be brought up. As he remembered it wasn't brought up in the jury room. (Where it was brought up he doesn't say). He doesn't remember its being mentioned any more. He believes it was cut off.

### "Personal Experiences"

Mr. Richardson testified when they were trying to place a value on pain, the juror Stroud said he had a nerve severed in his back in Korea and told the other jurors they just didn't appreciate what pain was. Stroud said: "Now she is suffering from a nerve injury, and I am suffering from a nerve injury. When that pain hits me I would be willing to give the Government back the $100 a month they are paying me plus a $100 out of my own pocket to be relieved of that pain. That is how much it hurts." The next morning Richardson told the members of the jury they were supposed to consider only evidence given from the witness stand. He didn't make much argument on this, he just pointed it out to them.

Mrs. Upton said her 74 year old mother suffered pain for several years. She informed the members of the jury they didn't know what pain was worth. He doesn't think her statement was mentioned further. Two other jurors, Hughes and Carnes, had lost their wives. One of them told about his wife dying and that she suffered quite a bit of pain. He knew because he was with her several months.

Mr. Skeaham testified personal experiences did come up when the jury was trying to value pain. It was hard for them to do and one juror gave them an example of how the Government did it—"how he had a certain amount of pain and the Government allows you a disability for pain of so much percentage according to how bad you are hurt." He couldn't remember whether anyone told them after this that they could consider only evidence from the witness stand.

■ We have summarized the testimony of the witnesses touching the overt conduct of jurors. We have omitted much of their testimony because it only dealt with the mental processes of the jurors, which of course cannot be considered.

■ We have reached the conclusion that we cannot presume the trial court found that misconduct did not occur because the only evidence in the record shows it did occur. Phillips v. Texas & Pacific Ry. Co., Tex.Civ.App., 223 S.W.2d 258, n. r. e. Since we have set out the evidence, we see no useful purpose to be served in discussing it except in connection with determination of injury. We do not regard the testimony as presenting any material conflicts.

■ Since we are of the view that misconduct occurred, we must determine whether the misconduct was harmful. Rule 327, Texas Rules of Civil Procedure, after providing for a hearing on motion for new trial based on jury misconduct, then provides that if material misconduct occurred the court may grant a new trial if it reasonably appears from the evidence given both on motion for new trial and on the trial of the case on its merits, as shown by the whole record, that injury probably resulted to the complaining party. Whether injury probably resulted is a question of law to be decided by the court. Trousdale v. Texas & N. O. R. Co., 154 Tex. 231, 276 S. W.2d 242; Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462. Of course, not every act of misconduct is considered harmful. It has been held that mere mention of such things as insurance and attorney's fees, without discussion, was in the given case not harmful. In determining whether misconduct is harmful each case must be considered in the light of all facts.

In this case the testimony shows that the misconduct occurred while the jury was discussing the issues dealing with damages. Issue No. 14 dealt with loss of earnings, loss of earning capacity, physical and men-

tal pain and suffering, past and future. Issue No. 15 dealt with past medical expense and Issue No. 16 dealt with future medical expense. The only evidence on the subject shows that the jury, after answering issues as to liability, began discussing damages about 3:30 in the afternoon. The record does not show how long it deliberated that afternoon. Neither does the evidence show the hour at which the jury returned to further deliberate, the next morning, but a verdict was reached about 10 or 11 o'clock the next morning. The Jury first agreed the total damage to be allowed was $33,250. Then they allocated $500 as past medical expense and $4,200 as future medical expense. This $4,200 was reduced to $1,200 to conform to the pleading.

When the jury commenced deliberating on damage, Mr. Richardson and another juror named Jackson each favored total damages of $10,000. So far as we can ascertain from the record, all other jurors stood for amounts in excess of that finally arrived at. After the misconduct noted, Richardson and Jackson came up to the $33,250.

We feel that the evidence shows that there was more than a mere mention that General Electric and not Parris would have to pay the judgment. The only evidence given showed this was mentioned at various times during the deliberation. There was not prompt rebuke, though the next morning Mr. Richardson told the jurors they could only consider what would be reasonable compensation and ability to pay had nothing to do with it. We do not find there was admonition specifically concerning whether Parris would have to pay.

The evidence on the discussion of attorney's fees was even stronger. Richardson was positive in his testimony that for 4 or 5 minutes there was discussion not only of the fact that Mrs. Jackson would have to pay an attorney's fee but the percentage she would have to pay was discussed. It was discussed that if Mrs. Jackson was to get fair compensation this must be con-

sidered. While Skeaham testified he vaguely remembers attorney's fees being mentioned in a joking way, and it wasn't mentioned long, his whole testimony was vague and uncertain. He said, "as he re-membered" it wasn't brought up in the jury room but he doesn't state where it was brought up. He "believed" it was cut off.

Jurors giving evidence of personal experiences was attested to by both witnesses, as stated above, and we think further comment is unnecessary. We only observe there was not prompt rebuke of this discussion though Mr. Richardson said the next morning he said they were to go by the evidence given on trial, though he says he did not make much argument on this.

We must also look to the record of the trial on the merits as it bears on damages. We will only summarize.

Mrs. Jackson at the time of the collision was working at Weingartens. She missed about four weeks of work. She said she could not continue her work and lost her job. She later went to work at a small store and meat market, where she was making more money than she had made at Weingartens. However, the evidence showed she had to miss a good deal of time, but she was not penalized for time lost because she had a very indulgent and understanding employer.

Mrs. Jackson, for more than a year prior to the collision, had been under treatment by Dr. Duel, a chiropractor. Her complaints were of frontal headaches and low back pain. These headaches were described as tension headaches. She would go for treatments when she was tired. For some months before the collision she had been going to Dr. Carpenter, an osteopath. She complained of suboccipital headaches. Dr. Carpenter had taken x-rays and they showed arthritis. These headaches were described as tension headaches.

After the collision her complaints were of the same nature as before, but the pain to her was much more pronounced. Dr. Duel diagnosed her injuries as possible cervical disc injury and compaction nerve injury. Dr. Zionts diagnosed her injuries as damage to the cervical nerves and possible ruptured cervical disc, though he did not think there was a ruptured disc. There was certainly aggravation of her preexisting condition.

The record shows that the jurors Jackson and Richardson originally were for $10,000 as damages. After the misconduct occurred they agreed to $33,250. While Richardson says he feels the misconduct had no effect on his decision, this disavowal of influence merely reflects a mental process of the juror which cannot be considered.

■ We are of the view, in the light of the whole record, that each act of misconduct probably caused injury to appellant. Too, their cumulative effect was such that injury probably resulted to appellant.

The cause is reversed and remanded.

On Appellees' Motion for Rehearing

Appellees urge that we erred in holding that jury misconduct occurred and it was harmful.

We adhere to the holdings originally made.

Alternatively, appellees urge that since the misconduct occurred only in connection with the damage issues after the jury had answered all other issues, we have a case of the verdict being excessive and this can be cured by remittitur. Appellees offer a remittitur and urge that the judgment of the trial court should, upon the filing of a remittitur, be reformed and affirmed.

■ The suggestion is not unappealing to us. We find, however, on briefing the matter, that under the facts of this case, the Supreme Court, through the Commission of Appeals, in City of Waco v. Darnell, 35 S.W.2d 134, holds that remittitur will not

remove the taint of the misconduct present here. See also Union Bus Lines v. Moulder, Tex.Civ.App., 180 S.W.2d 509, no writ hist.

The motion for rehearing is overruled.