Gordon DOBBINS, Individually and as Next
Friend of Stacy Dobbins, a minor, et
al., Appellants,

v.

TEXAS TURNPIKE AUTHORITY, d/b/a
Dallas North Tollway and City
of Dallas, Appellees.

No. 8160.

Court of Civil Appeals of Texas,
Texarkana.

June 5, 1973.

Joe N. Boudreaux, Baker, Foreman & Boudreaux, Frank P. Hernandez, Hernandez, Cazorla, Ramirez & Perini, Dallas, for appellants.

D. L. Case, Jackson, Walker, Winstead, Cantwell & Miller, Dallas, T. Alex Eastus, City Atty., Dallas, G. Duffield Smith, Jr., Gardere, Porter & DeHay, Dallas, for appellees.

CORNELIUS, Justice.

This is a suit for damages for personal injuries filed by appellants Gordon Dobbins, Individually and as Next Friend of Stacy Dobbins, a Minor, Nancy Dobbins, wife of Gordon Dobbins, and Armando Herrera and wife, Jeanette Herrera, against the Texas Turnpike Authority, d/b/a North Dallas Tollway and the City of Dallas. The injuries were alleged to have been caused by a head-on collision on February 25, 1968, between automobiles driven by Gordon Dobbins and Armando Herrera. Appellants predicated their case against the Turnpike Authority on its alleged negligence in constructing and maintaining a certain exit route for the North Dallas Tollway connected with Harry Hines Boulevard, a city street in Dallas. The action against the City of Dallas was predicated upon allegations that the City failed to place adequate signs warning drivers not to turn off Harry Hines Boulevard onto the North Dallas Tollway and that Harry Hines Boulevard was changed from a two-way street with six traffic lanes prior to the opening of the tollway, to a one-way street after the opening of the tollway, and that the City failed to change the markings on the pavement and the signal lights to reflect such change, and failed to inform the driving public of such change.

The Turnpike Authority filed a plea in abatement asking that the suit be dismissed because the Authority, as an agency of the State, was immune from tort liability. The City of Dallas filed its motion for summary judgment on the basis that the allegations of the petition, if true, constituted only acts of negligence in the performance of governmental functions, and therefore, the City was immune from liability for such acts. The trial court sustained the plea in abatement and granted the City's motion for judgment and appellants have perfected this appeal.

Appellants' point of error 1 contends that the doctrine of governmental immunity does not apply to the Texas Turnpike Authority under the provisions of the Act creating such Authority. Point 2 contends that such immunity should not be applied to the Authority because the State could not be compelled to respond in damages if appellants recovered judgment against the Authority. Points of error 3 and 4 urge that the doctrine of governmental immunity should be abolished or should not be applied to the Authority or the City of Dallas under the circumstances of this case, because said doctrine is fundamentally unfair and unjust.

The collision involved here occurred prior to the enactment of the Texas Tort Claims Act (Art. 6252–19, Tex.Rev. Civ.St.) and such Act is therefore not applicable here in any event.

The Texas Turnpike Authority was created by the Texas Legislature in 1953 by enactment of Article 6674v Tex.Rev.Civ. Stat.Ann. It provides generally for the creation of the Texas Turnpike Authority and authorizes it to construct, maintain, repair and operate turnpike projects and to issue turnpike bonds to finance such activities. The Act provides that, "The Authority is hereby constituted an agency of the State of Texas, and the exercise by the Authority of the powers conferred by this Act in the construction, operation, and maintenance of turnpike projects shall be deemed and held to be an essential governmental function of the State." The members of the State Highway Commission, together with six persons appointed by the Governor, serve as directors of the Authority.

Other provisions of the Act bearing on the questions before us are: Bonds issued by the Authority shall not constitute debts of the State or any subdivision thereof, nor shall they pledge the faith and credit of the State but shall be payable solely out of revenues from the Authority's activities; the Authority may not incur financial obligations which cannot be serviced from tolls or revenues; the Authority shall adopt by-laws for its regulation; it may sue and be sued; it may fix and adjust tolls as charges for transit over its projects; it may acquire, hold and dispose of real and personal property; it shall have the right of condemnation over public and private property; it may remove public roads when necessary and replace them with better facilities, paying all resulting damages or expenses; it may enter upon lands and premises to conduct surveys, making reimbursement for actual damages to such premises; it may take title to property in its own name; it may issue revenue bonds to pay the costs of its projects, using the proceeds solely to pay such costs, which bonds must be approved by the Attorney General; and it shall pay the cost of maintaining, repairing and operating such projects from the tolls collected.

The Act further provides that the exercise of the powers granted by the Act will be in all respects ".  .  .  .  for the benefit of the people of this State, for the increase of their commerce and prosperity, and for the improvement of their health and living conditions, and as the operation and maintenance of the turnpike projects .  .  . will constitute the performance of essential governmental functions, the Authority will not be required to pay any taxes  .  .  .  .  upon any project .  .  . or property  .  .  . or upon the income therefrom  .  .  . and the bonds  .  .  . and the income therefrom .  .  . shall at all times be free from taxation within the State." The Act further provides that the Authority is directed to receive for the State, as a part of the free highway system thereof, any toll road operated by a toll road corporation, and after all project bonds have been paid, all projects shall become part of the state highway system and shall be operated by the State Highway Commission free of tolls. It is further provided that all private property damaged in carrying out the powers of the Act shall be restored or repaired and adequate compensation made therefor out of funds provided by the Act.

The exact question presented to us here concerning the Turnpike Authority's right to governmental immunity from tort liability has not been passed upon in Texas. The question of governmental immunity for similar agencies, whether immunity from suit without consent, or immunity from tort liability even if consent has been acquired, has been passed on in several other states, and there is a clear division of opinion as to whether, for purposes of governmental immunity, such bodies are in fact "agencies of the State." The courts of Washington, Kansas, Oklahoma, California and Florida have clothed these bodies with the governmental immunity of the State. Gross v. Washington State Ferries (Washington Toll Bridge Authority), 59 Wash.2d 241, 367 P.2d 600 (1961); Woods v. Kansas Turnpike Authority, 205 Kan. 770, 472 P.2d 219 (1970); Henry v. Oklahoma Turnpike Authority, 478 P.2d 898 (Okla.Sup.Ct.1970); Bettencourt v. State, 123 Cal.App.2d 60, 266 P.2d 201 (1954); Spangler v. Florida State Turnpike Authority, 106 So.2d 421 (Fla.Sup.Ct.1958); Hosterman v. Kansas Turnpike Authority, 183 Kan. 590, 331 P.2d 323 (1958). The States of New Jersey, West Virginia, Missouri, Illinois and Wisconsin have refused to extend governmental immunity to such bodies. McCabe v. New Jersey Turnpike Authority, 35 N.J. 26, 170 A.2d 810 (1961); Christo v. Dotson, 151 W.Va. 696, 155 S.E.2d 571 (1967); Hope Natural Gas Company v. West Virginia Turnpike Commission, 143 W.Va. 913, 105 S.E.2d 630 (1958); State ex rel. State Highway Commission of Missouri v. Bates, 317 Mo. 696, 296 S.W. 418 (1927); People v. Illinois State Toll

Highway Commission, 3 Ill.2d 218, 120 N. E.2d 35 (1954).

The Acts creating the authorities in these states vary in many particulars, of course, but all of them are generally similar. The decisions in states refusing immunity place considerable emphasis upon the fact that obligations of the Authority are not debts of the State and are payable solely from turnpike revenues. Ultimately however, nearly all of the cases rely on one or more expressions in the Act creating the agency which indicate legislative intent to allow or to refuse governmental immunity to such agency. In many states the question does not arise, since the general doctrine of governmental immunity, recently falling into increasing disfavor, has been abolished entirely. 57 Am.Jur.2d, Sec. 65, pps. 73 to 75.

■ The arguments against immunity are persuasive, especially in view of the provisions of the Act granting to the Authority considerable powers of self-government, and making the obligations of the Authority payable exclusively out of revenues derived from tolls collected and proceeds from bonds which are specifically said not to be debts of the State or pledges of the faith and credit of the State. Contrasted with these provisions, however, are those of the Act expressly declaring the Authority to be an agency of the State; declaring that its activities shall be held to be essential governmental functions; providing that it has the right to remove and replace public roads when necessary; requiring the Attorney General to approve all bonds issued by it; declaring that the exercise of the powers granted to the Authority will be in all respects for the benefit of the people and their health and living conditions; exempting it and its property and its income from taxation; and providing that when the bonds are paid the projects and their property shall become a part of the State Highway System to be operated by the State Highway Commission free of tolls. In view of these later provisions, especially those declaring the Authority to be an agency of the State, and its activities to be essential governmental functions, it seems that it was the intent of the Legislature to create the Authority as a true agency of the State, having the same governmental immunity enjoyed by the State itself.

■ According to settled principles, a declaration by the Legislature that a particular body is a state agency, or that a particular activity is "governmental" will not necessarily be enforced by the courts simply because such declaration is made. But, unless such declaration is clearly wrong, it will be given effect as an expression of the will of the people through their elected representatives. City of Corsicana v. Wren, 159 Tex. 202, 317 S.W.2d 516 (1958). Unless such declaration is without reasonable basis in fact, it is, as stated in Bennett v. Brown County Water Imp. Dist. No. 1, 153 Tex. 599, 272 S.W.2d 498 (1954), the duty of the courts to give effect to the will of the people, so plainly expressed.

Although the status of the Texas Turnpike Authority as concerns immunity has not been passed upon by the Texas Courts, its creation as an agency of the State performing governmental functions has been noted by our Supreme Court in other cases, without any indication that such classification would not be given effect. Texas Turnpike Authority v. Shepperd, 154 Tex. 357, 279 S.W.2d 302 (1955); Texas Turnpike Company v. Dallas County et al, 153 Tex. 474, 271 S.W.2d 400 (1954).

Even though the Authority charges tolls from which it pays its expenses, and its obligations can only be paid out of such funds, its right to governmental immunity arises from its character as an agency of the State and from the nature of its purposes. Our courts have held that this immunity exists as to other governmental agencies despite the fact that such agencies charge fees, or act in purely proprietary capacities toward the plaintiffs. Ritch v. Tarrant County Hospital District, 476 S.W.2d 950

(Tex.Civ.App. Fort Worth 1972, writ ref'd, n. r. e. 480 S.W.2d 622); City of Dallas v. Smith, 130 Tex. 225, 107 S.W.2d 872 (1937).

We hold that the Texas Turnpike Authority is an agency of the State, entitled to the same governmental immunity from tort liability which, at the time pertinent here, was possessed by the State itself. Points of error Nos. 1 and 2 are overruled.

Points of error Nos. 3 and 4 urge that the doctrine of governmental immunity should be abolished in Texas.

■■ As noted earlier, the doctrine of governmental immunity is under attack and has been abolished in several jurisdictions. In Texas there has been recent legislation on the subject. Texas adopted the Texas Tort Claims Act (Art. 6252–19, Tex.Rev. Civ.Stat.) effective January 1, 1970. This Act provides for liability of governmental units for torts within certain limits and with certain exceptions. Sec. 14 of the Act provides that it shall not apply to acts or omissions which occurred prior to its effective date. Since the Legislature has now expressly waived sovereign immunity for torts, strictly limiting such waiver to certain amounts, times and occurrences, it is apparent that the Legislature did not intend to abolish the doctrine entirely, but deliberately retained it in some areas. As the acts and omissions complained of here occurred prior to the effective date of the Act, they fall within these areas. Appellants urge that since the doctrine of sovereign immunity is a creature of the courts, the courts and not the Legislature should abolish it. However, our Legislature in adopting the Tort Claims Act has given express legislative sanction to those areas of immunity still retained, and we do not believe this Court should contravene such a plain expression of the peoples' representatives. Points of error Nos. 3 and 4 are overruled.

The appellees in their briefs discuss the distinction between acts of negligence and the maintenance of a nuisance by the City of Dallas as bearing upon whether or not that appellee is entitled to governmental immunity in this suit. However, appellants have not raised this issue in their brief, and we therefore do not pass upon it.

The judgment of the trial court is affirmed.