STATE HIGHWAY DEPARTMENT, Appellant,

v.

Ruth PINNER, a feme sole, Appellee.

No. 7730.

Court of Civil Appeals of Texas, Beaumont.

Nov. 26, 1975.

Rehearing Denied Dec. 31, 1975.

---

1. No appeal was attempted from this order.

John L. Hill, Atty. Gen., Austin, O. J. Weber, Jr., Beaumont, for appellant.

G. I. Low, Beaumont, Joe H. Tonahill, Jasper, Bill A. Martin, Newton, for appellee.

DIES, Chief Justice.

In September 1970, Jessie Pinner was driving south on Highway 87 in Newton County, Texas. At about 8 A.M., in fog, he collided with an east bound (coming from his right) Missouri Pacific train and was instantly killed. The crossing had signal lights on both sides of the highway, and both were functioning before the collision. Shortly prior thereto the Texas State Highway Department had dispatched several vehicles to this area to repair the road. These vehicles were parked on the northwest side of the crossing. None of them were on the main-traveled portion of the highway. But one of them had blinking red lights on the top, and one (a pickup) had a revolving amber light. These lights were turned on. Pinner's widow brought suit under the Texas Tort Claims Act against the State Highway Department, and after a jury trial was given judgment in excess of $250,000 from which the Highway Department perfects this appeal.

Appellant's Points of Error Nos. 11 through 13 (which were argued first) quite eloquently argue that the evidence convicts Pinner of negligence as a matter of law. This is a very difficult and heavy load to carry in Texas. See *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792 (1951); *Texlan, Incorporated v. Freestone County*, 282

S.W.2d 283 (Tex.Civ.App.—Waco 1955, no writ); *Burt v. Lochausen*, 151 Tex. 289, 249 S.W.2d 194, 199 (1952).

"'An issue of fact is raised "if, discarding all adverse evidence, and giving credit to all evidence favorable to the plaintiff, and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, the jury might have found in favor of the plaintiff."'" *Alexander v. Appell Drilling Co.*, 290 S.W.2d 377, 380, 382 (Tex.Civ.App.—Waco 1956, writ ref'd n. r. e.).

As previously noted in this opinion, appellant had vehicles with lights turned on parked on the west side of the crossing. There is no proof that there was any vehicle parked on the east side of the crossing, which also had a signal. The jury found (in S.I. No. 1) that appellant had located its vehicles along the west side of the highway in such a manner as to materially obstruct Pinner's view of the approaching train, that this was negligence, and a proximate cause of the collision. It also found (in S.I. No. 5) appellant negligent in parking and locating its dump truck and other vehicles with blinking and rotating lights thereon at and near the railroad crossing, creating confusion and distracting Pinner's view of the signal lights and approaching train.

Mrs. Louis Johnson got to the crossing in question before the train had stopped. It was very foggy. The first thing she saw "was some highway trucks parked on the shoulder of the road and their light flashing."

"Q. And you say they were parked even with the railroad lights?

"A. Yes, sir. You could see the railroad lights flashing but you had to be looking for them."

She said these lights (on the highway trucks) confused and distracted her. The trucks were parked "in such a way" they obstructed the railroad signal lights.

B. J. Biscamp, a TV repairman in Newton, was driving behind. It was foggy, he saw "yellow trucks" and "it looked like one

of them had a sign sticking up in the truck." He didn't see the railroad signal lights because of the trucks, "he imagined." He didn't see any lights on the trucks. Conductor Doyle was seated on the left side of the engine and saw the collision. He said "I don't know whether these trucks prevented him [Pinner] from seeing the signal or not."

Highway Patrolman Lambert arrived at the crossing about twenty minutes after the accident. He was asked (by appellant's counsel), "Would the State Highway Department vehicles obstruct the view of one coming from the direction of Mr. Pinner?" His answer was, "Not one hundred per cent, no. . . . But, they shouldn't have prevented him from seeing the light on his left," he said. He measured the nearest highway department vehicle at seventy feet from the nearest track. He measured Pinner's skid marks as forty-two feet. While the highway vehicle flashing light was turned off when he got there, it could be confusing when on.

Witnesses for the Highway Department established that there was a dump truck with an iron wheel roller attached, a pickup truck, a maintainer, and a tractor, with rotary boom attached. There was an amber rotating light on the pickup. The dump truck had red lights on top.

While almost all of the testimony of Mrs. Johnson and Biscamp was disputed, still this, together with the undisputed testimony of the presence of the vehicles and the lights referred to, factually support the jury's finding in S.I. No. 1 and S.I. No. 5.

■ Using the test above cited in considering this summarized evidence, we cannot conclude Pinner was negligent as a matter of law. These points are overruled.

Appellant's first point of error contends the trial court erred in refusing to render judgment for it based on jury's answers to S.I. Nos. 13, 14A, 14B, 17, and 18. In passing upon this point of error it must be kept in mind that appellant is seeking in this case to take advantage of three of the four

defenses provided for in Tex.Rev.Civ.Stat. Ann. art. 6701d, § 86 (1969), which reads as follows:

"Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty (50) feet but not less than fifteen (15) feet from the nearest rail of such railroad and shall not proceed until he can do so safely when:

"(a) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a train

. . . .

"(c) A railroad engine approaching within approximately fifteen hundred (1500) feet of the highway crossing emits a signal audible from such distance and such engine by reason of its speed or nearness to such crossing is an immediate hazard;

"(d) An approaching train is plainly visible and is in hazardous proximity to such crossing."

Subdivision (c) was submitted to the jury by S.I. Nos. 13, 14, 14A, and 14B. In its answer to S.I. No. 13 the jury found the train emitted the audible signal, but in 14 it found that the engine did not constitute an immediate hazard. The jury therefore failed to find Pinner guilty of negligence per se in that respect. Issues 14A and 14B were excuse issues connected with subdivision (c) and answers to those two issues were immaterial.

■ Subdivision (d) was submitted to the jury by S.I. Nos. 15, 16, 17, and 18. In answer to those issues, the jury found the train was plainly visible and in hazardous proximity to the crossing; and, that Pinner failed to stop within 50 feet, but not less than 15 feet; and that such failure was a proximate cause of this collision in question. Pinner was thereby convicted of negligence per se under Subdivision (d) which proximately caused this collision. However, in answer to 18A that Pinner could not by the exercise of ordinary care have stopped his vehicle within that distance, and in answer to 18B the jury found Pinner's inability to stop was not caused by his own negligence.

The jury "excused" Pinner's compliance with the statute, and the trial court did not err in refusing to render judgment for appellant. *Christy v. Blades*, 448 S.W.2d 107 (Tex.1969); *Impson v. Structural Metals, Inc.*, 487 S.W.2d 694 (Tex.1972). See also *Southern Pacific Company v. Castro*, 493 S.W.2d 491 (Tex.1973). The jury found, in the answers to S.I. Nos. 18A and 18B, that Pinner was unable to stop by finding that he could not stop, and that his inability was not caused by his own negligence. "Inability" is a recognized "excuse" under the Restatement of Torts, and the case law as cited above. These excuse issues are supported by the same evidence quoted above in passing upon the points of error contending Pinner was negligent as a matter of law.

Appellant's Points of Error Nos. 2, 3, 4, and 5, assert the court erred in refusing to set aside the jury's answer to S.I. No. 12 because there was no evidence to support it; as a matter of law there was a clearly visible signal; there was insufficient evidence to support the finding, and the answer was so against the great weight and preponderance of the evidence as to be clearly wrong.

S.I. No. 12 submitted subdivision (a) under § 86 of Tex.Rev.Civ.Stat.Ann. 6701d (1969), as set out above, and the jury failed to find that a clearly visible electrical or mechanical signal gave Pinner warning of the immediate approach of the train.

■ Appellant's argument here is that since all of the evidence put its vehicles on the west side of the highway, therefore, there is no evidence the light on the east side was obscured. Of course, S.I. No. 12 does not specify either side of the highway, but assuming arguendo that appellant's contention is good, it is nevertheless immaterial. An affirmative answer to S.I. No. 12 would convict Pinner of negligence per se, but no issue as to proximate cause connected with this issue was requested or

submitted to the jury. In the absence of a finding as to proximate cause, the trial court could not render judgment for appellant on the negligence issue alone. See *Erwin v. Welborn*, 207 S.W.2d 124, 128 (Tex.Civ.App.—Amarillo 1947, writ ref'd n. r. e.); see also *Westinghouse Electric Corp. v. Pierce*, 153 Tex. 527, 271 S.W.2d 422, 425 (1954). These points are overruled.

Appellant's Points of Error Nos. 6, 7, 8, and 9 all refer to the jury answer to S.I. No. 14 contending that there was no evidence to support it; as a matter of law the train constituted an immediate hazard; there was insufficient evidence to support it; and the answer was so against the great weight and preponderance of the evidence as to be clearly wrong. The issue and answer follow:

"Q. Do you find from a preponderance of the evidence that such engine, by reason of its speed or nearness to the crossing on the occasion in question, constituted an immediate hazard?

"Answer: It did not constitute an immediate hazard."

Appellant argues that since Pinner hit the engine on the crossing it had to constitute an immediate hazard. The answer to this is that S.I. No. 14 was conditioned on a "We do" answer to S.I. 13 in which the jury found that when the engine was within 1,500 feet of the crossing it emitted an audible signal. So, then clearly the jury's finding of no hazard to S.I. No. 14 refers to the time when the engine was 1,500 feet from the crossing. These points are overruled.

Appellant's tenth point of error urges a conflict in the answers to S.I. Nos. 14, 14A, 14B, 18A. This point is grouped in appellant's brief with its arguments under the first nine points, and while somewhat unclear we take it appellant urges that the jury's failure to find "excuse" in 14A conflicts with the finding of "excuse" in 18A and that this leaves appellee without an excuse and makes Pinner guilty of negli-

gence as a matter of law. In 14A the jury failed to find that after the train constituted an immediate hazard, Pinner could not by the exercise of ordinary care have stopped within 50–15 feet of the rail. In 18A the jury found that after the train became plainly visible and in hazardous proximity, Pinner could not by the exercise of ordinary care have stopped, etc.

■ It is obvious to us that in 14A and 18A the jury had two different times in mind. In 14A they wrote, "Train no hazard—We do not." Point 18A required a time when the train was "plainly visible" which 14A did not. A train could be an immediate hazard or in hazardous proximity without being plainly visible. Hence, there is no conflict in 14A and 18A. We must presume the jury did not intend to return conflicting answers. *Traywick v. Goodrich*, 364 S.W.2d 190 (Tex.1963). And it is our duty where possible to reconcile the jury's answers to the issues. *Producers Chemical Company v. McKay*, 366 S.W.2d 220, 224 (Tex.1963); *C. & R. Transport, Inc. v. Campbell*, 406 S.W.2d 191, 195 (Tex.1966). This point is overruled.

■ Appellant's Point of Error No. 17 complains of jury misconduct in several instances. When jury misconduct is alleged it must be proved that it be material and from the record as a whole that injury probably resulted to the complaining party. J. Pope, *Jury Misconduct and Harm*, 12 Baylor L.Rev. 355 (1960). Tex.R.Civ.P. 327, 434, 503. See cases cited in 4 Tex.Jur.2d Part 2, *App. & Err.—Civil Cases*, § 857 at 436, Note 20 at 538, and Note 5 at 536 (1974); *Kittrell v. State*, 382 S.W.2d 273 (Tex.Civ.App.—Dallas 1964, writ ref'd n. r. e.); *State v. Cave*, 430 S.W.2d 692 (Tex.Civ. App.—Austin 1968, no writ). This burden is on the one complaining of the misconduct. *Fountain v. Ferguson*, 441 S.W.2d 506, 507 (Tex.1969). See cases cited in 4 Tex.Jur.2d Part 2, *App. & Err.—Civil Cases*, § 859 at 447 and Note 20 at 454 (1974). At the hearing appellant called Phillip Dans as a witness. He testified that when the jury was discussing the amount to be awarded

Mrs. Pinner he mentioned to Mrs. Martin (forewoman) that Pinner's attorney would "get his pay out of the amount" the jury awarded. He testified the attorney's fees were "figured up" in the amount of the recovery and, "Well, they said that they was going to give the lady enough money to pay for her and for Mr. Tonahill [her attorney]."

This constituted material misconduct. See *Parris v. Jackson*, 338 S.W.2d 280 (Tex. Civ.App.—Houston 1960, no writ); *Texas & P. Ry. Co. v. Gillette*, 125 Tex. 563, 83 S.W.2d 307 (1935); *Yellow Cab & Baggage Co. v. Donnell*, 159 S.W.2d 946 (Tex.Civ. App.—San Antonio 1942, no writ); *St. Louis Southwestern Ry. Co. v. Smithhart*, 9 S.W.2d 146 (Tex.Civ.App.—Beaumont 1928, no writ).

■ However, we do not believe appellant discharged its burden of showing probable harm. Juror Dans was the only juror questioned by appellant on this matter. Furthermore, this opinion later sustains points which reduce the trial court's judgment by more than $150,000. When we consider Pinner's age at death (51 years) his earning capacity (about $12,000 per year), the evidence as to future anticipated contributions from him to appellee, the resulting amount (after the deduction) is a sum that could not conceivably contain any amount for attorney's fees. Appellant's next contention under this point of error is that Juror Vaden said words to the effect that he (Vaden) was a driver's education teacher, knew the road, and that "he figured out he [Pinner] couldn't have been going over forty." Juror Dans said, "[T]hat's where I ended it [the discussion as to speed] because he's smarter than what I am so I can't argue with him."

■ While jurors cannot receive evidence outside of the record, it must be shown that others were influenced by the remark before reversal is required. *Mrs. Baird's Bread Company v. Hearn*, 157 Tex. 159, 300 S.W.2d 646 (1957). *Kittrell v. State*, supra. See also *Warren v. Dikes*, 404 S.W.2d 946 (Tex.Civ.App.—San Antonio 1966, no writ); see also, H. Wendorf, *Some Views on Jury Views*, 15 Baylor L.Rev. 379, 386 (1963); Tex.R.Civ.P. 327. We conclude this remark by Vaden, while certainly improper, does not require a new trial. Tex. R.Civ.P. 434. Dans was the only juror who testified as to these statements. The record reflects that with one exception (discussed herein later) Dans voted *with* the appellant on all applicable issues of negligence. So, certainly he was not influenced by the remark, and there is no showing that any other juror was influenced.

Finally, under this point, appellant contends the same ten jurors did not vote for liability on the pertinent special issues. Tex.R.Civ.P. 292 permits the rendition of a verdict "in any cause by the concurrence, as to *each and all answers made, of the same ten members* of an original jury of twelve." (Emphasis supplied.) The issue in question here was No. 19 which inquired as to whether Pinner's failure to stop his vehicle was the sole cause of the collision. Upon first count, the vote was 9–3 with Juror Dans voting "We do" along with the minority. As best as can be determined from the record, this was consistent with his previous votes of not imposing liability on the Highway Department. Upon recount, he stated, "I vote to make it ten. I told her [the forewoman] I'll vote on that one to get us out of here. The issue was thus answered, 'We do not.' "

■ We have not found any case, nor been cited any, construing this portion of the rule emphasized above. The rule clearly requires that the same ten jurors answer *all* of the issues. See Q. Keith, *Texas Rules of Civil Procedure*, 36 Tex.B.J. 401, 408 (1973). However, we conclude that as long as the same ten jurors voted for enough issues in the charge from which a judgment can be written, no reversible error is presented. This issue was unnecessary for appellee to recover. It could have been important to appellant only if ten jurors had agreed that Pinner's failure to stop was the sole cause of the collision.

Therefore, the error is harmless. Tex.R. Civ.P. 434.

The appellant has points that the court erred in not giving it credit for $15,000 on the judgment and in not giving effect to the $100,000 limit of the Texas Tort Claims Act, Tex.Rev.Civ.Stat.Ann. art. 6252–19, § 3 (Supp.1975). The railroad had settled its case with appellee for $15,000 of which $7,500 was paid Hartford Insurance Company, Pinner's compensation carrier. Appellant has heretofore been credited for $7,500. Appellee's attorney in oral argument conceded this point; so it is sustained without comment.

Appellee contends appellant waived the $100,000 limit of the Tort Claims Act by not pleading and urging it. We disagree. It cannot be waived. Prior to this act there was no liability at all in tort on the part of a governmental unit. J. Greenhill & T. Murto, *Governmental Immunity*, 49 Tex.L. Rev. 462 (1971); *McCrary v. City of Odessa*, 482 S.W.2d 151 (Tex.1972). See *Department of Pub. Safety v. Great S.W. Warehouses*, 352 S.W.2d 493, 495 (Tex.Civ.App.— Austin 1961, writ ref'd n. r. e.).

The Legislature did not entirely abolish immunity in passing the Tort Claims Act. See *Dobbins v. Texas Turnpike Authority*, 496 S.W.2d 744 (Tex.Civ. App.—Texarkana 1973, writ ref'd n. r. e.). See N. Bickley, *Local Government*, 24 SW. L.J. 199, 200 (1970).

Furthermore, the Texas Constitution, Art. III, § 44, prohibits the Legislature from granting "by appropriation or otherwise, any amount of money out of the Treasury of the State, to any individual, on a claim . . . when the same shall not have been provided by pre-existing law." Thus appellee could not recover the award of the trial court because the "pre-existing law" [Tort Claims Act] does not permit recovery above $100,000 per person. Appellee's only cause of action is because of and through the Texas Tort Claims Act. She must accept its limitations along with its rights and benefits. We sustain this point of error. Appellant has other points which we either find have no merit or which we believe present no reversible error, and all points not discussed herein are overruled.

We now enter the judgment, as we reform. It is ordered, adjudged, and decreed that Ruth Pinner do have and recover of and from the Texas State Highway Department $85,000.00 with legal interest until fully and finally paid. All costs are divided one-half to each party.

Affirmed as reformed.

KEITH, Justice (dissenting).

My dissent will be confined to two basic points: (a) the plaintiffs failed, as a matter of law, to establish any recognized excuse of the statutory violation; and (b), the jury misconduct.

*Justification or Excuse*

As Dean Keeton has written: "The only excuses which have been recognized by the supreme court are those listed in the *Restatement of Torts*:

"(a) the violation is reasonable because of the actor's incapacity;

"(b) he neither knows nor should know of the occasion for compliance;

"(c) he is unable after reasonable diligence or care to comply;

"(d) he is confronted by an emergency not due to his own misconduct;

"(e) compliance would involve a greater risk of harm to the actor or to others."[1]

---

1. P. Keeton, "Torts," *28 SW. L.J. 1, 2 (1974).* The reference is to *RESTATEMENT (SECOND) OF TORTS § 288A (1965)*, and the Supreme Court case referred to is *Impson v. Structural Metals, Inc.*, 487 S.W.2d 694, 696 (Tex.1972), where the Court adopted this section of the *Restatement* as its guide. Two scholars have written: "This case [*Impson*] defines the general principles that control legally acceptable excuses and justifications." L. Green and A. Smith, "Negligence Law, No-Fault, and Jury Trial —III," *51 TEXAS L.REV. 207, 214 fn. 17 (1973).*

The *Impson Rule* was made applicable to the railroad grade crossing statute now under review by the decision of *Southern Pacific Company v. Castro*, 493 S.W.2d 491 (Tex.1973), and the method of submission was set out but was *not* followed here.

Justice Pope explained the application of the rule in *L. M. B. Corporation v. Gurecky*, 501 S.W.2d 300, 303 (Tex.1973), in this manner:

> "The rule in Texas is that one who seeks to excuse a statutory violation must present some evidence of a permissible excuse for his statutory violation, whereupon the party with the burden of persuasion on negligence (plaintiff Gurecky) must obtain a jury finding that his adversary was negligent as measured by the common law or prudent man standard."

Although it has been suggested by some that the Supreme Court has in effect abolished the doctrine of negligence per se,[2] it has not yet receded from the five excuse or justification theories set out in *Restatement § 288A*.

The majority correctly recognizes the general rule that impossibility of compliance with a statute constitutes a valid excuse. The jury findings, which are referred to by the majority, indeed convict Pinner of failure to observe the requirements of *Art. 6701d, § 86, Tex.Rev.Civ.Stat.Ann. (1969)*. Having recognized that such fact was established, I next examine the record to determine if such noncompliance was excused. *Southern Pacific Company v. Castro*, supra. The majority fails to set out any evidence which would raise an excuse or justification issue. Certainly by reason of Special Issue 18A the jury found that Pinner "could not by the exercise of ordinary care have stopped his vehicle  .  .  .." But such a reply does not establish this as fact which we can uphold without there being evidence

to support it. Nor does it establish that Pinner had a legally acceptable excuse for such failure.

From my own examination of the record, I have been unable to find any evidence of probative value which would support such submission.[3] There is nothing to indicate that Pinner either did stop or attempted to stop his car before he was within forty-five feet of the crossing. The record in fact would support a finding that Pinner was going 60 m. p. h. at the time of the collision. Nor is there a scintilla of evidence that Pinner encountered *any* of the excuses as enumerated in *§ 288A of the Restatement (2d) of Torts* which our Supreme Court has adopted. *Impson v. Structural Metals, Inc.,* supra. The absence of findings on excuse cannot be deemed as found in order to support the judgment. *Southern Pacific Company v. Castro*, supra (493 S.W.2d at 496).

Neither do I agree with the majority's general conclusion: " 'Inability' is a recognized 'excuse' under the RESTATEMENT OF TORTS." The only subsection of *§ 288A* which contains a form of the word "able" is (c), to which I assume the majority refers. Subsection (c) states: "he is unable *after reasonable diligence or care to comply.*" (emphasis supplied) By the clear language of this subsection, inability (or some extraction of that term) is an excuse *only after* the person has taken some measure to comply or was diligent in attempting to follow the statutory regulation. Again, there is no evidence which could be construed as permitting a deduction that Pinner was diligent or took care to comply with the statute in question prior to his violation thereof. It does not appear that "inability" by itself has reference to any of the other permissible excuses cited in *§ 288A*. Certainly, as was recognized in

---

2. Associate Justice Steakley, joined by Justices Walker and Johnson dissenting in *Gurecky*, supra; Justice Steakley dissenting in *Sparkman v. State*, 519 S.W.2d 852, 858 (Tex.1975).

3. I note, contrary to the form of submission suggested in both *Castro* and *Gurecky*, supra, the trial court placed the burden of proof upon the plaintiff; whereas, under the rationale of these cases, such burden rested upon the defendant.

*Impson*, supra (487 S.W.2d at 696), the excuses enumerated in § 288A are not exhaustive. But I do not believe that even under a liberal interpretation can it be said that "inability," *in and of itself*, is a permissible excuse under our case law and the *Restatement*. See Comments a–j, *RESTATEMENT (SECOND) OF TORTS, § 288A (1965)*.

There is some testimony by others that the lights on appellant's trucks were distracting to them, but the effect of such conditions, if true, was never connected or associated with Pinner at the time of the collision. The record further does not indicate that such testimony was introduced in the posture of an excuse. I do not think this comes within the realm of "reasonable inferences" which can be made by a jury, as permitted in this State. See, e. g., *Lynch v. Ricketts*, 158 Tex. 487, 314 S.W.2d 273 (1958). A jury cannot make deductions or conclusions upon circumstances of which there is no evidence for the findings must be within the range of testimony and supported by the evidence. *Great American Insurance Company v. Lang*, 416 S.W.2d 541, 550 (Tex.Civ.App.—Austin 1967, writ ref'd n. r. e.). Nor do I think this constitutes "some evidence" produced by the appellees to which Justice Pope referred in *Castro* (493 S.W.2d at 498), for I am not making reference to the burden of persuasion but to the fact that one seeking mitigation of a statutory violation must present some evidence of the nature of the excuse. *L. M. B. Corporation v. Gurecky*, supra (501 S.W.2d at 303).

As acknowledged by Justice Walker in his concurrence in *Castro*, we are dealing with a statute which requires strict observance and the violation of which cannot ordinarily and readily be determined by laymen by the mere resort to common knowledge. It thus becomes even more important that evidence as to excuses be manifested and put into issue before the trier of fact. Any claimed excuse must fall within the limited classes of the statute and case law. *Impson v. Structural Metals, Inc.*, supra.

When the record is void of any evidence, this determination becomes impossible not only for the trier of fact but also in the context of a review by an appellate court. Appellee failed to present any evidence of excuse in accordance with the standards laid down in *L. M. B. Corporation v. Gurecky*, supra; *Impson v. Structural Metals, Inc.*, supra, and *Southern Pacific Company v. Castro*, supra. Without any such supporting evidence, I would reverse the trial court's judgment and remand the case for new trial.

*Jury Misconduct*

Turning now to the jury misconduct, I find that the majority correctly states the crux of the jury discussion on attorney's fees. The record also reflects that after Juror Dans said that Pinner's attorney would "get his pay out of the amount" that they awarded, the other jurors stated that they knew this. As noted in the majority, this was more than "mere discussion," and I do not believe that the jurisprudence of this State permits the conclusion that it was harmless. There was no admonition by any member of the jury that this discussion was inappropriate.

While generally the effect of improper conversations may be cured by instructions or admonitions from other jurors, *Ausley v. Johnston*, 450 S.W.2d 351, 355 (Tex.Civ.App.—El Paso 1970, writ ref'd n. r. e.); *Pittman v. Baladez*, 304 S.W.2d 601 (Tex.Civ.App.—Austin 1957), rev'd on other grounds, 158 Tex. 372, 312 S.W.2d 210 (1958), it has been held by our highest court that an admonition by a foreman to jurors discussing attorney's fees is not sufficient to cure the harm. *White Cabs v. Moore*, 146 Tex. 101, 203 S.W.2d 200 (1947); *Texas Employers Ins. Ass'n v. Hatton*, 152 Tex. 199, 255 S.W.2d 848 (1953).

A discussion of awarding attorney's fees is not an immaterial issue. When such consideration is given in a particular case, it directly affects and necessarily alters the award which is to be given the plaintiff. The mere mention of the percentage that

an attorney is to collect as his fee has been held to be *reversible* error; the rights of the defendant in such instances are materially prejudiced. *Texas & P. Ry. Co. v. Gillette*, 125 Tex. 563, 83 S.W.2d 307 (1935). Every case cited by the majority on misconduct as to attorney's fees holds that reversible error was committed when a jury discussed attorney fees, and those cases deal with fact situations which are certainly less thorough and less harmful than in the instant case. See also, *Central Power & Light Company v. Freeman*, 431 S.W.2d 897 (Tex.Civ.App.—Corpus Christi 1968, writ ref'd n. r. e.).

It cannot be overlooked that Phillip Dans' testimony was uncontroverted at the hearing for jury misconduct. Where a witness' testimony was not impeached, a court is not free to ignore his statements. *St. Louis Southwestern Ry. Co. v. Smithhart*, 9 S.W.2d 146 (Tex.Civ.App.—Beaumont 1928, no writ); *Rodman Supply Company v. Jones*, 370 S.W.2d 951 (Tex.Civ.App.—Amarillo 1963, no writ).

I do not concur in the majority's rationale that the age and earnings of Pinner mitigate or sanitize this improper discussion. No case has been found which relies upon such reasoning and such reasoning is immaterial to the issue in question. Further, I do not understand that it is of consequence that the court has reduced plaintiff's award by over $150,000. The majority merely did what the Tort Claims Act required; i. e., placed a maximum limit of $100,000 for an individual's recovery under the terms of the Act. By establishing this recovery at the absolute upper level permitted by legislation, the majority has exacted no "penalty" for the jury's improper discussion. It has completely vitiated and ignored *any* amounts which the jury assigned as attorney's fees.

This is not the intended result of our case law. It is no answer to the question of attorney's fees to state that a "remittitur" can cure any harm which may have been committed. Where, as here, no determination can be made as to any definite sums

which were awarded as attorney's fees by the jury, a remittitur cannot cure the erroneous effect of the discussion of the fees. *City of Waco v. Darnell*, 35 S.W.2d 134 (Tex.Comm'n App.1931, holdings approved); *Houston Sports Association, Inc. v. Russell*, 450 S.W.2d 741 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd n. r. e.). There is no evidence as to any amounts which the jury assigned as attorney's fees. Thus, any consideration of a remittitur or reduction in the award is not only inapplicable but also immaterial.

The discussion of attorney's fees was prior to the time when the jury decided upon the amount of compensation to be awarded to the plaintiff. Where such a discussion takes place before a figure has been reached, it cannot be said that misconduct was not prejudicial to the appellant (defendant) and requires a new trial. See, e. g., *Yellow Cab & Baggage Co. v. Donnell*, 159 S.W.2d 946 (Tex.Civ.App.—San Antonio 1942, no writ); *St. Louis Southwestern Ry. Co. v. Smithhart*, supra.

The next ground of misconduct is the remarks made by Juror Vaden as to the speed that Pinner was traveling at the time of the accident. Phillip Dans testified, again uncontroverted, that Vaden questioned the trial evidence that Pinner was going 60 m. p. h. when he collided with the train. When reminded by Dans that that was the evidence in the case, Vaden replied that he was a driver's education teacher and was familiar with the road and that "he couldn't have been going over forty." At the hearing, Dans stated he was a former pupil of Vaden and that no one questioned Vaden's conclusion and that "that's where I ended it [the discussion as to speed] because he's smarter than what I am so I can't argue with him."

I do not take issue with the principles cited by the majority governing their disposition of this question. I think it is clear, however, that a juror was influenced by the above mentioned remark. Dans positively stated that the reason he did not pursue the fact that Pinner was going 60 m. p. h. was

the fact that he considered Vaden smarter than he and that he could not argue with such intelligence. It is not dispositive to say that because Dans voted with the minority on the negligence issues, the effect on the influenced juror was "harmless." Such logic involves deductive reasoning as to what the jurors thought, and we are not permitted to inquire into the mental processes of the jury. *City of Houston v. Quinones*, 142 Tex. 282, 177 S.W.2d 259 (1944). The test is whether, upon review of the record as a whole, "injury probably resulted." *Tex.R.Civ.P. 327; Fountain v. Ferguson*, 441 S.W.2d 506 (Tex.1969). Considering the record as a whole, the jury was influenced by an improper remark which probably caused the rendition of an erroneous verdict. See *Rodman Supply Company v. Jones*, supra (370 S.W.2d 953), where it was held that the "clocking" of the approach to the scene of the accident in issue by a juror was reversible error as being influential evidence outside of the record.

Both grounds of misconduct discussed above were such that a new trial should be ordered upon each ground. But, even if it could be concluded that by themselves reversible error has not been shown, certainly the cumulative effect of the misconduct requires reversal. See *Scoggins v. Curtiss & Taylor*, 148 Tex. 15, 219 S.W.2d 451 (1949); *Sims v. McKnight*, 420 S.W.2d 173 (Tex.Civ.App.—Houston [14th Dist.] 1967, writ ref'd n. r. e.), and cases cited therein.

I would reverse the judgment of the trial court and remand the case for a new trial.